No. 72,536

LYNN McCARTHY, *et al.*, *Appellants*, v. CITY OF LEAWOOD, KANSAS, *Appellee.*

(894 P.2d 836)

Opinion filed April 21, 1995.

*John C. Eisele,* of John C. Eisele, Chartered, of Prairie Village, argued the cause and was on the briefs for appellants Lynn McCarthy, Victor L. and Helen B. Regnier, and Ranch Mart, Inc.; *Barton P. Cohen,* of Blackwell Sanders Matheny Weary & Lombardi, of Overland Park, for appellant Ronald E. Nelson; *James R. Hubbard,* of Watson, Marshall, L.C., of Olathe, for appellants Jane L. Jameson, Trustee U.T.A. of the Naomi J. Jameson Trust, Jane L. Jameson Individually, and James R. Hubbard, Trustee U.T.A. of the Richard A. Jameson Trust; *O.P. Peterson, Jr.,* of Kansas City, Kansas, for appellant Van Liews, Inc.;

*Lawrence C. Gates,* of Gates & Clyde, Chartered, of Overland Park, for appellants South Roe Development Co. and Plaza Development Co.; *Matthew A. Buchmann,* of Overland Park, for appellants Hazel Sharp, Trustee of the Perry M. Sharp Trust C., and Hazel Sharp Individually; *George A. Lowe,* of Lowe, Farmer & Bacon, of Olathe, for appellants William B. and Jacqueline A. Madden and Ira Stein; *Leland H. Corley,* of Lewis, Rice & Fingersh, of Kansas City, Missouri, for appellant LPL Associates, L.P., were with him on the briefs.

*Patricia A. Bennett,* of Bennett, Lytle, Wetzler, Martin & Pishny, L.C., of Prairie Village, argued the cause, and *Richard S. Wetzler,* of the same firm, was with her on the brief for appellee.

*Donald L. Moler, Jr.,* general counsel, of Topeka, was on the brief for *amicus curiae* League of Kansas Municipalities.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Plaintiffs Lynn McCarthy, Victor and Helen Regnier, and Ranch Mart, Inc., filed a petition seeking declaratory and injunctive relief invalidating and restraining the use of Leawood Ordinance 1027C, which conditions building permits and plat approval for properties within the K-150 Corridor on payment of impact fees. In addition to Leawood, McCarthy named as defendants other property owners who would be affected by the relief sought. With the exception of Fleming Companies, Inc., which alleges exemption from impact fees, the property owners answered by praying that the plaintiffs be granted the relief sought. Several of the defendant property owners also stated cross-claims against Leawood for the same relief. Leawood intends to finance a portion of the improvement of K-150 with the impact fees. On cross-motions, the district court denied injunctive relief and entered summary judgment in favor of Leawood and against the property owners. Appellants include defendant property owners as well as the plaintiffs. The appeal was transferred to this court pursuant to K.S.A. 20-3017.

In January 1988, Leawood adopted Ordinance No. 1027C, known as the K-150 Corridor Impact Fee Ordinance. Ordinance 1027C was codified as Chapter XIII, Article 5, ¶¶ 13-501 through 13-515 of the Code of the City of Leawood.

McCarthy, the Regniers, Ranch Mart, Inc., and the defendant property owners are the owners of tracts of land in Leawood which lie, at least partially, within the K-150 Corridor, also known

as 135th Street. The impact fee set forth in Ordinance 1027C applies to the properties owned by plaintiffs and defendant property owners.

The impact fee applies to properties within the K-150 Corridor, as depicted on the Leawood Master Development Plan. Ordinance 1027C refers to the Leawood Master Development Plan (Plan) as follows: "13-503 Definitions . . . (k) Highway K-150 Corridor: all of that land within the north and south Highway K-150 reverse frontage roads, as set forth in the Leawood Master Development Plan." The courses of the proposed north and south reverse frontage roads are not set out by legal description in the Plan, but are shown in a map that depicts the planned development usages of the K-150 Corridor.

In October 1988, Leawood adopted Ordinance No. 1073C, which designated several streets, including 135th Street (K-150), as main trafficways pursuant to K.S.A. 12-685. In October 1989 Leawood adopted Ordinance No. 1130C, which superseded Ordinance No. 1073C and designated several streets, including 135th Street (K-150), as main trafficways pursuant to K.S.A. 12-685.

Current impact fee rates and amounts for the K-150 Corridor are set forth in Leawood Resolution No. 1141. Impact fee calculations are based on the trips to be generated from new development as determined using the Institute of Traffic Engineers Trip Generation Manual (4th ed. 1987) and on the type and square footage of the development. The district court gave the following example: "[T]he ITE Trip Generation Manual calculates that general office development will produce 15 trips per day per 1000 square feet while retail commercial development will generate 50 trips per day per 1000 square feet." The rate is $26.45 per trip. A landowner who built one new residence on his or her property would pay an impact fee of $264.50 (projected 10 trips x $26.45 per trip).

At the time the briefs were prepared, the landowners had not applied for either a building permit or plat approval nor had they paid or been asked to pay a K-150 Corridor impact fee. Leawood had not calculated the amount of any impact fees that any of the landowners would be required to pay.

Leawood projects the total cost of the K-150 improvements to be $9,761,250. If all property within the K-150 Corridor were developed to its highest potential, the impact fees imposed would total approximately $2,925,100. Thus, approximately 30% of the total cost could be financed by impact fees. Leawood projects that 40% of the trips on the improved K-150 will be generated by new development in the K-150 Corridor. The City has no plan to create an improvement district and levy special assessments under K.S.A. 12-6a01 *et seq.* to finance any part of this project.

We first consider whether a city's designation of a street as a main trafficway under K.S.A. 12-685 precludes its financing improvements to the street by impact fees. In the district court, the landowners argued that the outcome of this case should be based on the recent decisions of another division of the Johnson County District Court in *Davis v. City of Leawood,* 257 Kan. 512, 893 P.2d 233 (1995), *Bauer v. City of Olathe,* 257 Kan. 540, 894 P.2d 823 (1995), and *Landau v. City of Overland Park,* (No. 71,979, unpublished opinion, this day decided). The district court judge declined to base the decision in this case on the others due to differences in the issues and the theories presented. In particular, he noted that the central issue in the present case "is whether the City had authority under its home rule powers to enact the impact fee ordinance."

The district court identified the issues in this case as follows:

1. Is the ordinance authorized under home rule?

2. Does the ordinance violate Article 11, § 5 of the Kansas Constitution? and

3. Is the ordinance invalid based upon an alleged deficiency in its definition of the impact fee area?

Following this rule from *Moore v. City of Lawrence,* 232 Kan. 353, Syl. ¶ 4, 654 P.2d 445 (1982), "[a] city ordinance should be permitted to stand unless an actual conflict exists between the ordinance and a statute, or unless the legislature has clearly preempted the field so as to preclude municipal action," the district court's first inquiry was whether an actual conflict exists between Leawood Ordinance 1027C and the Main Trafficway Act, K.S.A. 12-685 through 12-690, and whether Leawood is preempted from

imposing impact fees. It is in this inquiry that the present case overlaps with *Davis, Bauer,* and *Landau.*

The home rule amendment, Art. 12, § 5 of the Kansas Constitution, provides in pertinent part:

"(b) Cities are hereby empowered to determine their local affairs and government including the levying of taxes, excises, fees, charges and other exactions except when and as the levying of any tax, excise, fee, charge or other exaction is limited or prohibited by enactment of the legislature applicable uniformly to all cities of the same class: . . . Cities shall exercise such determination by ordinance passed by the governing body with referendums only in such cases as prescribed by the legislature, subject only to enactments of the legislature of statewide concern applicable uniformly to all cities, to other enactments of the legislature applicable uniformly to all cities, to enactments of the legislature applicable uniformly to all cities of the same class limiting or prohibiting the levying of any tax, excise, fee, charge or other exaction and to enactments of the legislature prescribing limits of indebtedness."

In *Claflin v. Walsh,* 212 Kan. 1, 6-8, 509 P.2d 1130 (1973), the following principles relative to home rule were stated:

"No longer are cities dependent upon the state legislature for their authority to determine their local affairs and government. Since home rule, cities have power granted directly from the people through the constitution without statutory authorization. [Citations omitted.]

"The home rule power of cities is not absolute. It is subject to the power of the legislature to act in certain areas—exclusively in some, optionally in others. These limitations on city power are expressly set forth in the home rule amendment. . . .

. . . .

"Section 5(*d*) of Article 12 requires a liberal construction of the powers and authority granted cities for the purpose of giving to cities the largest measure of self-government. This provision simply means that the home rule power of cities is favored and should be upheld unless there is a sound reason to deny it. Where the legislature has acted in some area a city's power to act in the same area should be upheld unless the legislature has clearly preempted the field so as to preclude city action. Unless there is actual conflict between a municipal ordinance and a statute, the city ordinance should be permitted to stand. [Citation omitted.]

"In view of the liberal construction provision of Section 5(*d*), in determining whether a legislative enactment is applicable uniformly to all cities such a legislative intent should be clearly evident before the courts should deny a city the right to exercise home rule power in that area. Even before the passage of the home rule amendment we held that legislative intent to reserve exclusive jurisdiction to the state to regulate must be manifested clearly by statute before

it can be held that the state has withdrawn from the cities power to regulate in the premises. [Citation omitted.]"

The landowners argue that once Leawood designated K-150 as a main trafficway, the City is required to pay all costs attributable to the improvements either from city-at-large funds or general improvement bonds. Thus, the City is precluded from thereafter utilizing other "statutory financing mechanisms." The landowners contend:

"Ordinance 1027C, Leawood, Kansas Highway K-150 Corridor Impact Fee Ordinance, is void under home rule authority as repugnant to the Kansas Main Trafficway Act, K.S.A. 12-685 through 12-690. . . . And the legislature made no further allowance for other financing devices under either the anticipated home rule amendment or under the guise of general police powers. Ordinance 1027C is in direct conflict with the Kansas Main Trafficway Act and therefore must fail as an exercise of home rule power."

Principally on the ground that it would render parts of the Main Trafficway Act useless, the district court rejected the landowners' contention that 12-690 prohibits the use of any but city-at-large funds and general improvements bonds, as specified in 12-689, for financing improvements to a street once it has been designated as a main trafficway. K.S.A. 12-689 provides:

"All costs of improvements or reimprovements authorized under the provisions of this act, including acquisition of right-of-way, engineering costs, and all other costs properly attributable to such projects shall be paid by the city at large from the general improvement fund, general revenue fund, internal improvement fund, or any other fund or funds available for such purposes, or by the issuance of general improvements bonds."

And K.S.A. 12-690 provides: "This act shall be supplemental to all other acts relating to the improvement of streets, and shall not prevent the use of other statutes for the improving of any such street, boulevard or avenue."

The district court reasoned that 12-690 is not needed in cases where a street has not been designated as a main trafficway, and, therefore, if it is to have any meaning, it must have meaning in cases where a designation has been made. The district court illustrated its point with this rephrasing of the landowners' position:

"(1) If the City *does* designate the street as a main trafficway, all costs must be paid by city-at-large funds under the authority of the Act; and (2) if the City

*does not* designate the street as a main trafficway, other statutory provisions must be used to determine how the costs are paid. K.S.A. 12-690 would be rendered meaningless under both scenarios. Under the first scenario, it would be meaningless because no 'supplemental' statutes could be used, anyway, given the designation. Under the second scenario, it would be meaningless because no portion of the Act even comes into play unless a designation had first been made."

The district court concluded that the entire Main Trafficway Act could be read in harmony and all parts of it given meaning if 12-690 were construed to permit and 12-689 were construed not to exclude the use of city-at-large financing in combination with other forms of financing. Also, based upon consideration of the Main Trafficway Act as a whole, the district court concluded that the word "shall" in 12-689 does not limit a city's power to use alternative funding sources pursuant to 12-690. Thus, the district court interpreted 12-689 and 12-690 as authorizing concurrent financing of costs of improvements with city-at-large funds and fees and assessments. Given this construction of the provisions of the Main Trafficway Act, the district court concluded, no actual conflict exists between the Main Trafficway Act and Leawood's impact fee ordinance.

On appeal, the landowners argue that 12-689 and 12-690 are unambiguous. K.S.A. 12-690, their argument continues, permits financing mechanisms not specified in the Main Trafficway Act to be used for improving streets which have not been designated as main trafficways. K-150 has been designated by Leawood ordinance as a main trafficway. The only two financing mechanisms which may be used to finance improvements to streets which have been designated as main trafficways, according to the landowners, are those specified in 12-689—city-at-large funds and general improvements bonds. Impact fees are neither and, for this reason, cannot be used to finance a main trafficway. Hence, according to the landowners, the Leawood ordinance which conditions building permits and plat approval for new development within the K-150 Corridor on payment of impact fees conflicts with the Main Trafficway Act.

Leawood, for the most part, reiterates the reasoning of the district court. It adds that "the City currently plans to complete K-150 improvements with city-at-large funding." This makes it ap-

pear that Leawood is suggesting that impact fees are city-at-large funds within the meaning of 12-689. Here is that statute with the emphasis advocated by the City:

"All costs of improvements or reimprovements authorized under the provisions of this act, including acquisition of right-of-way, engineering costs, and all other costs properly attributable to such projects *shall be paid by the city at large from* the general improvement fund, general revenue fund, internal improvement fund, or *any other fund or funds available for such purposes,* or by the issuance of general improvements bonds."

In its proposed uncontroverted facts for its summary judgment motion, on the other hand, Leawood stated (and the district court found) that impact fees would total approximately $2,925,100 and that at least $717,900 in Leawood city-at-large funds would be used to finance the improvements. This would indicate that Leawood considers the impact fees as reducing the amount which it will have to expend in improving the main trafficway rather than as city-at-large funds. If, as the court ruled, the means of financing specified in 12-689 are not exclusive, how the impact fees are categorized will have no significance. If, as the landowners assert, 12-689 precludes use of any means not specified in that provision, the validity of Leawood's action could depend on how impact fees are categorized.

Under the landowners' construction of 12-689, an actual conflict exists between the impact fee ordinance and the Main Trafficway Act. By its terms, the Main Trafficway Act is an enactment uniformly applicable to all cities. K.S.A. 12-685 authorizes "[t]he governing body of any city" to designate certain streets as main trafficways. Where a municipal ordinance conflicts with a statute of uniform applicability, the ordinance fails as an invalid exercise of home rule power. See *Executive Aircraft Consulting, Inc. v. City of Newton,* 252 Kan. 421, 424-25, 845 P.2d 57 (1993). According to the landowners, Ordinance 1027C, therefore, is invalid.

The landowners offered the affidavit of Arden Ensley in support of their argument that the Main Trafficway Act is the exclusive means of financing improvements of a street designated as a main trafficway. The trial court in *Davis, Bauer,* and *Landau* accepted and relied on the affidavit of Ensley. Here, the district

court rejected the affidavit as a source of information about legislative intent and gave no consideration to the affidavit in interpreting K.S.A. 12-690. The reasons given by the district court for not crediting the affidavit were that Ensley was a lobbyist rather than a legislator, that the post-enactment statements even of legislators generally are not considered, and that the 35 years which have passed since enactment of the Main Trafficway Act represent too great an impediment to precise recollection of fine detail. We agree.

Ensley worked as a staff attorney for the League of Kansas Municipalities, which "helped to draft" and lobbied for passage of the Main Trafficway Act. Ensley stated that he "was personally involved in the drafting." Here are the pertinent paragraphs of his affidavit:

"5. Prior to 1959, cities could not authorize issuance of bonds to finance the improvement of roadways with at-large funds without designating them 'main trafficways', 'main arterial trafficways', 'major traffic thoroughfares', 'main thoroughfares' or something similar thereto and qualifying them under one of several pieces of special legislation enacted into law for cities of various sizes.

"6. The main trafficway act of 1959 applied to cities of all sizes and provided a uniform means for financing improvements to designated main trafficways.

"7. K.S.A. 12-690 states that the main trafficway act is supplemental to all other acts relating to the improvement of streets. This section was inserted in the act to assure that the special legislative acts already on the books and not specifically repealed regarding main trafficway improvements would not be invalidated. The act was designed to provide an independent alternative to other financing methods and not as a part of a finance package to be used in combination with other acts; nor was it intended to authorize any other kind of financing of streets designated as main trafficways under this act."

As the district court noted, even the post-enactment statements of legislators are generally not considered by Kansas courts. The district court relied on *Hand v. State Farm Mut. Auto. Ins. Co.,* 2 Kan. App. 2d 253, 257, 577 P.2d 1202, *rev. denied* 225 Kan. 844 (1978), in which a provision of the Kansas Automobile Injury Reparations Act was at issue. That Act became effective July 1, 1973. In its 1978 opinion, the Court of Appeals wrote:

"We are aware that defendant has presented a recently prepared affidavit of the chairman of the House subcommittee wherein it is said the legislative intent was that survivors' benefits were to replace only the monthly earnings of the

deceased actually lost by the survivors. We are unable to square the affiant's statements with the facts of legislative action. We believe the latter speaks more loudly and we are unaware of precedent for judicial ascertainment of legislative intent through statements of legislators made years after the event." 2 Kan. App. 2d at 257.

In the present case, the gap between enactment and affidavit is 35 years rather than the 5 years which the Court of Appeals referred to as "years after the event." And, of course, the affiant is a lobbyist rather than a legislator. It is the legislature's intention which is at issue, and Ensley's affidavit contains nothing to indicate what the legislature intended. The district court was correct in rejecting Ensley's affidavit as evidence of the intent of the legislature in 1959.

This court has frequently stated the rule of statutory construction:

" ' "Interpretation of a statute is a question of law, and it is a function of this court to interpret a statute to give it the effect intended by the legislature. The fundamental rule of statutory construction, to which all others are subordinate, is that the intent of the legislature governs. In determining legislative intent, we are not limited to consideration of the language used in the statute, but may look at the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested." *Cyr v. Cyr*, 249 Kan. 94, Syl. ¶ 2, 815 P.2d 97 (1991).' " *First Page, Inc. v. Cunningham*, 252 Kan. 593, 601, 847 P.2d 1238 (1993).

"[T]he court must give effect to the legislature's intent even though words, phrases or clauses at some place in the statute must be omitted or inserted. . . . In construing statutes, the legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible." *In re Marriage of Ross*, 245 Kan. 591, 594, 783 P.2d 331 (1989).

" 'In order to ascertain the legislative intent, courts are not permitted to consider only a certain isolated part of parts of an act, but are required to consider and construe together all parts thereof in *pari materia. When the interpretation of some one section of an act according to the exact and literal import of its words would contravene the manifest purpose of the legislature, the entire act should be construed according to its spirit and reason, disregarding so far as may be necessary the strict letter of the law.'* Kansas Commission on Civil Rights

*v. Howard*, 218 Kan. 248, Syl. ¶ 2, 544 P.2d 791 (1975). (Emphasis added.)" *Todd v. Kelly*, 251 Kan. 512, 516, 837 P.2d 381 (1992).

We agree with the landowners that 12-689 and 12-690 are unambiguous. However, as pointed out by the district court:

"Plaintiffs rest their case upon their construction of one section of the Act, K.S.A. 12-689, and they ignore entirely one key phrase in that section. Plaintiffs highlight the following language of the statute: 'All costs . . . shall be paid by the city at large . . . .' If that were the entirety of the relevant provisions, plaintiffs would be correct. But plaintiffs ignore this language: 'All costs of improvements . . . *authorized under the provisions of this act* . . . shall be paid by the city at large . . . .' (emphasis added.) That language—when construed in conjunction with K.S.A. 12-690—leads to a much different conclusion."

The landowners not only ignore the above language but also the clear import of K.S.A. 12-690. K.S.A. 12-690 provides that this Act "shall be supplemental to all other acts" relating to the improvement of streets and "shall not prevent the use of other statutes for the improving of any such street." As noted by the district court:

"The Main Trafficway Act comes into play *only when a city has designated a street as a main trafficway*. When no such designation has been made, the Act has no effect whatsoever. Thus, K.S.A. 12-690 is not needed at all in cases in which a street is *not* designated as a main trafficway. Accordingly, to give effect to the legislative intent (and to find meaning in all parts of the statute), K.S.A. 12-690 *must* have meaning in cases in which a designation *has* been made under the Act.

"Plaintiffs simply say that once a designation has been made, all costs must be paid by city-at-large funds. If the plaintiffs' argument were correct, K.S.A. 12-690 would have no meaning in such cases. This interpretation would read K.S.A. 12-690 entirely out of the Act."

If K.S.A. 12-690 has any meaning, it must be that the statute permits a city to use other Acts for the purpose of financing improvements to all streets, including those designated as a main trafficway. If this was not the intent, the legislature could have easily and clearly stated that it was limited to the exclusive financing of main trafficways.

The landowners argue that the language "shall be paid by the city at large" in 12-689 is mandatory and not directory. Thus, once a city designated a street as a main trafficway, the city was required to pay for the improvements from at-large funds.

In this regard, the district court viewed the language of 12-689 not as either mandatory or directory but more as one piece which must be fitted into a whole. There, the district court concluded that the word "shall" in 12-689, if read to limit a city's power to use alternative financing sources, stripped 12-690 of meaning. In order to harmonize and give meaning to all the various provisions of the Main Trafficway Act, the district court construed 12-690 to permit and 12-689 not to exclude the use of city-at-large financing in conjunction with other forms of financing. It seems quite reasonable to approach the statutory construction in this way where the issue has been posed as one of preclusion or exclusivity rather than mandating or directing. The question is whether cities are precluded from using means of financing not specified in 12-689 or, phrased another way, whether the means specified in 12-689 are exclusive.

Absent an actual conflict between the impact fee ordinance and the Main Trafficway Act, the ordinance will be upheld. In *City of Junction City v. Lee*, 216 Kan. 495, 501, 532 P.2d 1292 (1975), we said:

"A test frequently used to determine whether conflict in terms exists is whether the ordinance permits or licenses that which the statute forbids or prohibits that which the statute authorizes; if so, there is conflict, but where both an ordinance and the statute are prohibitory and the only difference is that the ordinance goes further in its prohibition but not counter to the prohibition in the statute, and the city does not attempt to authorize by the ordinance that which the legislature has forbidden, or forbid that which the legislature has expressly authorized, there is no conflict [citation omitted]."

In that regard, the district court correctly noted:

"The ordinance does nothing that is prohibited by statute; the statute is expressly supplemental to other statutory provisions. The statute certainly does not prohibit impact fees as a method of obtaining reimbursement for roadway improvements. Further, it should be noted that the home rule amendment separately provides authority for cities to levy 'fees . . . and other exactions' unless specifically limited or prohibited by statute. Given the liberal construction to be afforded to home rule enactments, the Main Trafficway Act certainly should not be considered to prohibit impact fees such as those enacted here by Leawood."

K.S.A. 12-689 cannot be construed by itself but must be considered together with K.S.A. 12-690 and other provisions of the

Main Trafficway Act. In so doing, we must consider the whole Act and not read one statute in isolation from the other.

When the two statutes are read together, the district court's interpretation is consistent, harmonious, and sensible. The designation of a street as a main trafficway does not prevent special benefits accruing to the landowners within a benefit district. In that event, there is no logical reason to preclude financing the improvements under the general improvement and assessment statutes or the impact fee ordinance. If the legislature had intended the Main Trafficway Act to be an exclusive means of financing a street so designated, then it could easily have said so. We conclude that the Main Trafficway Act does not preclude the use of impact fees together with city-at-large funds to finance the costs of improvements. Thus, we find no conflict exists between the Main Trafficway Act and Leawood's impact fee ordinance.

The landowners also contend that the legislature preempted the enactment of the impact fee ordinance by passage of the Main Trafficway Act. The district court held that it did not. The district court quoted from *Johnson County Water Dist. No. 1 v. City of Kansas City*, 255 Kan. 183, 193, 871 P.2d 1256 (1994); *Dillon Stores v. Lovelady*, 253 Kan. 274, 279, 855 P.2d 487 (1993); and *Executive Aircraft Consulting, Inc. v. City of Newton*, 252 Kan. at 425, to the effect that the legislature must clearly preempt the field so as to preempt city action. Thus, the district court concluded, the doctrine of implied preemption is inapplicable. Because the legislature did not expressly preempt the field with the Main Trafficway Act and, in fact, expressly made it supplemental to other provisions of law, the district court held that the Main Trafficway Act did not preempt enactment of the impact fee ordinance. However, the landowners' only contention with regard to preemption is that K.S.A. 12-689 requires that the street improvements be financed exclusively by city-at-large funds. We rejected that argument, and thus the district court correctly held that the impact fees were not preempted by the Main Trafficway Act.

The landowners also contend that, in addition to being tested for conflict with a statute of uniform applicability or operation in

a field clearly preempted by the legislature, a municipal ordinance must be scrutinized for validity against various other measures of home rule power. Included are reasonableness, federal constitutional guarantee against uncompensated taking, state constitutional guarantee against certain municipal taxes, enabling legislation, police power, identifiability of affected geographic area, and authority reserved to a state agency.

Reasonableness. The landowners argue that the impact fee ordinance is "constitutionally offensive under home rule" because it is unreasonable. Unreasonable features and effects alleged by the landowners include the percentage of Leawood's share of improvement costs to be paid by impact fees, the ordinance's providing for increases in the impact fee rate, and the rate's being defined as "the amount of the applicable impact fee per trip generated by new development in the Highway K-150 corridor."

The landowners rely on *Restaurants of Wichita, Inc. v. City of Wichita*, 215 Kan. 636, 640, 527 P.2d 969 (1974), for the principle that "the home rule amendment in broadening the powers of municipalities did not extend to them the power to enact unreasonable ordinances under the guise of police power," citing *Community Antenna TV of Wichita, Inc. v. City of Wichita*, 205 Kan. 537, 471 P.2d 360 (1970). Justice Prager, writing for the court in *Restaurants of Wichita*, also stated:

"Hence in a case of this type where the action of a city governing body is subjected to judicial scrutiny, the issue to be determined is the reasonableness or unreasonableness of the city's action. In applying this test a court will not substitute its own judgment of reasonableness for that of the legislative body charged with the primary duty and responsibility of determining the question of reasonableness. (*City of Lyons v. Suttle*, 209 Kan. 735, 498 P.2d 9.) There is a presumption the governing body of a city acted reasonably and it is incumbent upon those attacking its action to show the unreasonableness thereof. (*Eastborough Corporation, Inc. v. City of Eastborough*, 201 Kan. 491, 441 P.2d 891.)" 215 Kan. at 640-41.

The landowners have failed to meet the burden of showing the impact fee ordinance to be unreasonable. In addition, examination of the plaintiffs' motion for summary judgment indicates that unreasonableness of the ordinance was not a ground for invalidating it which was presented to the district court. In their response to

Leawood's motion for summary judgment, the landowners included one paragraph about unreasonableness being a common-law restriction on municipal authority. It appears that the landowners were contending that the ordinance was unreasonable but there was no need to resort to the common-law restriction to invalidate it because "there are specific statutory limits which prohibit Leawood's Highway K-150 Impact Fee Ordinance [from] being a legitimate exercise of home rule power." This court does not consider issues raised for the first time on appeal. See *Tamplin v. Star Lumber & Supply Co.*, 251 Kan. 300, 310, 836 P. 2d 1102 (1992).

*Federal constitutional guarantee against uncompensated taking.* The landowners contend that Leawood's impact fee, because it conditions land use approval on fee payment, constitutes an uncompensated taking in violation of the Fifth Amendment. Here is the pertinent language of the Fifth Amendment: "[N]or shall private property be taken for public use, without just compensation." The landowners generally rely on *Dolan v. City of Tigard*, 512 U.S. ___, 129 L. Ed. 2d 304, 114 S. Ct. 2309 (1994). That case involved the city's conditioning building permit approval on the dedication of portions of Dolan's property to the city for a floodplain greenway and a pathway for pedestrians and bicycles. The majority concluded that the conditions which required the dedication of land constituted an uncompensated taking. There is nothing in the opinion, however, which would apply the same conclusion to Leawood's conditioning certain land uses on payment of a fee. The landowners cite no authority for the critical leap which must be made from a fee to a taking of property. Moreover, it does not appear that the issue was presented to the district court.

*State constitutional guarantee against certain municipal taxes.* The landowners contend that the impact fees are taxes and are illegal under Article 11, § 5 of the Kansas Constitution. The constitutional provision states: "No tax shall be levied except in pursuance of a law, which shall distinctly state the object of the same; to which object only such tax shall be applied." The district court concluded that the impact fee is not a tax, and, even if it were,

Leawood has complied with the constitutional requirements. We agree.

There is general agreement that the distinction between a fee and a tax is authoritatively described in *Executive Aircraft Consulting, Inc. v. City of Newton*, 252 Kan. 421. After reviewing cases from other jurisdictions, this court concluded:

"[A] tax is a forced contribution to raise revenue for the maintenance of governmental services offered to the general public. In contrast, a fee is paid in exchange for a special service, benefit, or privilege not automatically conferred upon the general public. A fee is not a revenue measure, but a means of compensating the government for the cost of offering and regulating the special service, benefit, or privilege. Payment of a fee is voluntary—an individual can avoid the charge by choosing not to take advantage of the service, benefit, or privilege offered." 252 Kan. at 427.

Applying the definitions from *Executive Aircraft* to the facts of the present case, the district court stated:

"[T]he K-150 Corridor Impact Fee area is, at present, largely undeveloped farmground. It is presently serviced by what is primarily a two-lane road, which serves as a state highway as well as a city street. If property owners within that area wish to develop their land for other, more intensive uses, the city will charge an impact fee to defray the increased costs cause by the development. This is properly categorized as a fee, not a tax."

The landowners seem to be arguing that the impact fee, like Newton's fuel flowage fee, in fact is a tax. Newton unilaterally imposed a fee based on aviation fuel transported onto the airport by suppliers and in a tanker truck owned by Executive Aircraft, which operates its aircraft refurbishing business on the city's airport property. Fuel transported onto the airport competed with the city's on-site aviation fuel sales. This court concluded that the fuel flowage fee was a tax because the city was collecting revenue on the sale of fuel despite the legislature's intending to preempt local units of government from doing so. 252 Kan. at 431. Similar considerations are not presented in this case. The impact fee is not added onto the price of a commodity which is being sold or used in competition with city-operated sales.

The landowners also argue that the impact fees violate K.S.A. 79-4424(a) (Corrick), which requires an election before a city may impose an excise tax or tax in the nature of an excise on the use

of real property. Leawood points out that the statute was repealed in 1972. (L. 1972, ch. 380, § 15; April 11.) The landowners purport to quote from *Callaway v. City of Overland Park*, 211 Kan. 646, 655, 508 P.2d 902 (1973), for the proposition that charges for the use of property are taxes in the nature of excise which cannot be authorized by home rule power. They omitted, however, the court's reference to 79-4424 which makes it clear that the now-repealed statute was the operative limitation on home rule power.

Enabling legislation. It is the landowners' contention that cities cannot charge impact fees in the absence of state enabling legislation specific to impact fees. "Kansas does not have such a statute. Therefore, Kansas is not one of those jurisdictions that permits municipal impact fees." The argument is built on the law of other jurisdictions. The landowners assert that Florida is the only state to allow imposition of impact fees in the absence of enabling legislation. They further assert that "a minority of American states have passed statutory enabling acts that provide for the legal imposition of impact fees." Municipal impact fees, the argument continues, are prohibited in all other states, including Kansas.

Leawood asserts that on appeal is the first time the landowners formulated the argument that enabling legislation is required and built it around cases from other states. In a strict sense, Leawood seems to be correct. However, the landowners generally argued in their motion for summary judgment that Leawood lacked express legislative authority to impose the fees, and at least one of the cases relied on in this segment of their appellate argument was quoted to the district court. Furthermore, much of the district court's opinion reads like a treatise on municipal power under the Kansas home rule amendment. Thus, there is no question about the district court's having considered the point raised here.

Leawood's other objection to the argument presented by the landowners is that they rely on rules from other states without providing information about the self-governing power of municipalities in those other states. Without that knowledge, Leawood contends, the court has no basis for gauging whether the foreign cases have any persuasive or authoritative value. We agree. There

can be little profit in reviewing a number of cases from other states. Moreover, as Leawood points out, not all the cases cited by the landowners even involve municipal power.

The grant of power to the cities of Kansas expressly empowers them to levy fees and other exactions except where it is prohibited by state enactment uniformly applicable to all cities of the same class. We previously noted the landowners' argument that the impact fees were prohibited by Art. 11, § 5 of the Kansas Constitution. The only other argument the landowners make centers on K.S.A. 14-556 to the effect that a state enactment uniformly applicable to all cities of the same class prohibits Leawood from levying impact fees. That statute provides:

"The governing body of any city of the second class is hereby authorized and empowered to improve state or federal highways located in such city . . . . The cost of such improvement and of the land condemned or purchased shall be paid out of any funds, which such city may have on hand, or such city may issue general improvement bonds in the manner provided by law to procure such funds."

The landowners construe 14-556 in the same way they construe K.S.A. 12-689. Thus, their argument in this regard is rejected based on the same rationale in determining no actual conflict exists between Leawood's impact fee ordinance and the Main Trafficway Act.

Police power. The landowners' principal contention seems to be that police power does not supply the authority needed by Leawood to impose the impact fees. They argue that "[t]he District Court's contention that the 'impact fee' scheme adopted by the City of Leawood is a proper exercise of police powers in this state is clearly erroneous." Although the landowners' statement of this issue makes it sound otherwise, the district court's entry of judgment in Leawood's favor does not depend on authority being supplied by police power.

The "contention" which the landowners refer to seems to be this statement of the district court:

"As the City argues in this case, the impact fees it has adopted here are enacted pursuant to what are traditionally characterized by a city as police powers. Widner, 37 Kan. L. Rev. at 625 ('Subdivision regulations, which include impact fees,

are properly adopted under the authority of the police power.'); 8 J. Jeffrey Reinholtz & Timothy P. Bjur, *McQuillin's The Law of Municipal Corporations* § 25.118.50 (1991) ('Ordinances imposing fees on developers and new developments are generally enacted pursuant to the police power possessed by the municipalities.')"

The statement was made in the context of the district court's consideration of the question whether the legislature preempted enactment of the impact fee ordinance by passage of the Main Trafficway Act. According to the district court, until *Blevins v. Hiebert*, 247 Kan. 1, 795 P.2d 325 (1990), this court consistently held that " '[l]egislative intent to reserve to the state exclusive jurisdiction to regulate an area *must be clearly manifested by statute* before it can be held that the state has withdrawn from the cities the power to regulate in the field.' *Garten Enterprises, Inc. v. Kansas City*, 219 Kan. 620, 620, 549 P.2d 864, 865 (1976) (emphasis added)." Broad language in *Blevins* unsettled the principle, but, according to the district court's analysis, in cases decided since *Blevins*, this court seems to be restricting it to its facts. Thus, the district court concluded, the doctrine of implied preemption is inapplicable. Because the legislature did not expressly preempt the field with the Main Trafficway Act and, in fact, expressly made it supplemental to other provisions of law, the district court held that the Main Trafficway Act did not preempt enactment of the impact fee ordinance.

Although the landowners' statement of this issue gives the impression that the district court treated police power as an independent source of authority for Leawood's enacting the impact fee ordinance, that clearly is not the case. The district court noted that "[t]he theoretical underpinning for the police power analysis in *Blevins* is unknown," and went on to endorse the principle stated in other Kansas cases "that home rule is merely an alternative procedural mechanism to enabling statutes for cities to use in exercising police powers."

Identifiability of affected geographic area. The landowners argue that in order for the impact fee ordinance to be valid, the area of the K-150 Corridor must be determinable from substantial physical evidence, or a legal description of "the burdened geo-

graphic area" must be contained in the ordinance. The following definition of the K-150 Corridor is from subsection (k) of Ordinance 1027C: "[A]ll of that land within the north and south Highway K-150 reverse frontage roads, as set forth in the Leawood Master Development Plan."

The landowners principally rely on cases involving the creation of fictional blocks for benefit districts. See *Bell v. City of Topeka*, 220 Kan. 405, 553 P.2d 331 (1976), where the City of Topeka created fictional blocks to conform to the meandering course of Burlingame Road. There, the fictional blocks were rejected because the governing statute, K.S.A. 13-10,115, specified that assessments were to be made to the middle of each block adjacent to the improved street. There is no comparable statutory requirement for areas in which impact fees may be imposed.

The landowners complain that they "have no means to effectively formulate property improvements upon an artist's rendering of the burdened area" and that "[s]uch renderings alone do not provide an exact or justifiable basis for substantial burdens on private property." While declining to find some requirement for specificity where none exists, the district court correctly suggested to the landowners that the ruling in this case did not preclude them from pursuing boundary disputes at a later date. In this regard, the district court stated:

"The City has provided all of the specificity that is required or, indeed, possible in its description of the highway K-150 corridor. The land is presently undeveloped. The City's master development plan provides a drawing of the corridor, which is bounded by certain existing streets and two not-yet-constructed streets, each referenced as 'reverse frontage road.' The fee will not be assessed under the ordinance until building permits for development within the area are sought. The ordinance provides for appeals to the City of any fees imposed under the ordinance. Leawood Code Section 13-512. If, as development occurs, there is any legitimate cause of debate about whether a property properly has been included within the K-150 Impact Corridor, that issue should be presented during the appeal process to the City and, ultimately, to the courts if necessary. In the abstract, however, there is nothing improper as a matter of law about the definition provided in the ordinance for the area in which the impact fee will be assessed."

*Authority reserved to a state agency.* Finally, the landowners argue that even if the corridor is adequately identified for the

time, its designation by the City likely is void because the Kansas Secretary of Transportation has sole authority to do so. Their argument is based on an unrelated stipulation in an unrelated case dating from 1979. In *Ventures in Property I v. City of Wichita*, 225 Kan. 698, 715, 594 P.2d 671 (1979), the court recited that "[i]t was stipulated the Secretary of Transportation was the only one with authority to designate highway routes or corridors in the State of Kansas." The corridor in question was the right-of-way for a proposed highway. The court held:

"[W]here the proposed platting of land by an owner for residential development is approved by the governing body of a city in accordance with previously approved zoning regulations, subject to the sole restriction that a portion of the land in a defined highway corridor within the proposed plat be reserved in its undeveloped state for possible highway purposes at some indefinite date in the distant future, the governing body has taken property from the landowner for which it is required to respond in damages by inverse condemnation." 225 Kan. at 713-14.

The corridor, which only the Transportation Secretary was authorized to designate, was not a four-block wide corridor which was intended to encompass commercial and office developments in addition to the roadbed, as in the present case.

The landowners also contend that the district court's entry of summary judgment in Leawood's favor was improper because facts material to the City's position are disputed. They identify the following facts as disputed: (1) amount of revenue from the impact fees, (2) how the revenue will be spent, (3) the "footprint" of the K-150 Corridor, (4) effect of the impact fee on the landowners, and (5) calculation of impact fees. The landowners have not assisted the court in its consideration of this issue. They do not link the facts they raise on appeal to Leawood's numbered paragraphs of proposed uncontroverted facts or to their response. Nor do they tie in the district court's discussion. The landowners rely on *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986), in arguing that they contested the City's proposed facts sufficiently to avoid summary judgment by merely "present[ing] evidence from which a jury might return a verdict in [their] favor." This court repeatedly has stated that "[t]he trial court is required to resolve all facts and

inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought." *Kerns v. G.A.C., Inc.*, 255 Kan. 264, 268, 875 P.2d 949 (1994).

From Leawood's perspective, even though the landowners stated that they controverted many of the City's proposed facts, no facts necessary to the district court's ruling were controverted because the landowners' controversions were "unreal, unsubstantiated or not in compliance with Supreme Court Rule 141." It appears that the district court agreed with Leawood's view.

The district court did not credit the landowners' controversion of Leawood's fact ¶¶ 4, 6, 9, 10, 12, 13, 14, 15, 16, and 17 on the ground that "no admissible evidence has been cited in controversion of those factual statements." Furthermore, the district court determined "that each of those paragraphs is fully supported by the sworn affidavits presented with the City's motion." In this regard, the landowners fault the district court for not stating why their evidence is inadmissible and urge this court to examine the documentary evidence de novo. They do not specify which documentary evidence. Our review of their response to the City's motion for summary judgment reveals that, with one exception, no evidence was cited or produced by the landowners in support of their controversions.

Amount of income from the impact fees and how it will be spent. The landowners' complaint that Leawood did not list the anticipated monetary contribution of the State seems valid, but it is not material to either the potential amount of income which impact fees may generate or the percentage of the total project cost which fees may represent. Those figures remain constant with or without a figure for the State's contribution.

The State's contribution does seem relevant to Leawood's fact ¶ 16, which states: "Even if all properties within the K-150 Corridor were improved at their highest and best use, the projected amounts of the impact fees would not reimburse the City for all its expenditures to improve the project." The district court adopted Leawood's fact ¶ 16 as part of its findings of fact. The landowners' objection to this paragraph centered on the costs and the revenue from impact fees being unknown. The guts of this

paragraph, however, is reimbursement. The federal, county, and CARS contributions total $6,118,250. Subtracting that amount from the estimated total project cost leaves $3,643,000. The agreement furnished by the landowners states that the contribution of the State of Kansas will be limited to 50% of the allowable project costs up to $3,628,500. Assuming for the purpose of this argument that all costs remaining after federal, county, and CARS contributions are allowable, the State would pay 50% of $3,643,000, or $1,821,500. The amount remaining for the City to pay would be $1,821,500, which is less than the projected amount of revenue from impact fees.

The "footprint" of the K-150 Corridor. Leawood asserts that the only facts material to the district court's holding on the definition of the corridor are admitted. The City concedes that there is no legal description of the tracts included in the corridor. The City asserts that the landowners conceded the existence of a drawing which shows the area and uses of tracts of land within the corridor, and the landowners do not deny it in their reply brief.

Effect of the impact fee on the landowners. The landowners' contention seems to be that it is unknown at this time how they will be affected by the ordinance. They state that they are burdened and affected adversely even though no plat approval or building permits have been sought. Leawood denies that any effect is material to the outcome.

Calculation of impact fees. Leawood proposed the following fact: "The City's calculations of any impact fees required to obtain building permits is set forth in Resolution 1141." The landowners responded:

"9. Controverted. This is a recent Resolution (enacted in 1994) imposing much higher fees and replacing an earlier Resolution. The increase was from about $2,000,000 to about $2,900,000, a 45% increase. Further, Resolution 1141 sets forth only the rationale for establishing the 'multiplier' to be used in calculating the impact fee under ordinance 1027C. Resolution 1141 does not set forth the formula used to make the calculations. However, even the calculation of the impact fee under Ordinance 1027C cannot be made, since the part of the equation relating to residential units or square footage is undetermined. There is no specific proposed development which defines either the number of 'residential units' or the 'square foot of floor area, unfinished' anywhere within the impact

fee corridor, so Plaintiffs cannot know the amount of the impact fee to be imposed on any of the landowners."

Leawood states that the figures to be used in calculating fees are set forth in the resolution. The City also contends that the landowners really did not controvert the City's fact. Moreover, they did not comply with the requirement of Supreme Court Rule 141 (1994 Kan. Ct. R. Annot. 160) to substantiate propositions with specific authority. The rule provides in pertinent part:

"Any party opposing said motion has filed and served on the moving party within twenty-one (21) days thereafter . . . a statement whether each factual contention of movant is controverted, and if controverted, a concise summary of conflicting testimony or evidence, and any additional genuine issues of material fact which prelude summary judgment (with precise references as required in paragraph [a] [to pages, lines and/or paragraphs of transcripts, depositions, interrogatories, admissions, affidavits, exhibits, or other supporting documents contained in the court file and otherwise included in the record])."

The City quotes the following from *McCullough v. Bethany Med. Center*, 235 Kan. 732, 736, 683 P.2d 1258 (1984): "Rule 141 is not just fluff—it means what it says and serves a necessary purpose."

The only question which needs to be considered is whether the district court's finding that the projected maximum amounts of revenue from impact fees would not reimburse Leawood for its expenditures on the K-150 improvement project is material to the district court's entry of summary judgment in favor of the City. An issue-by-issue review of the district court's opinion does not disclose any aspect of the decision which depends on the questionable factual finding. None of these issues involves consideration of the apportionment of project costs between impact fee revenue and city-at-large money. Thus, the district court did not err in not denying Leawood's motion for summary judgment on the ground that material facts were disputed.

The judgment of the district court is affirmed.

HOLMES, C.J., and ABBOTT, J., not participating.

DAVID PRAGER, C.J. Retired, and ROBERT H. MILLER, C.J. Retired, assigned.