The Honorable Tim Shallenburger Speaker of the House of Representatives State Capitol, Room 380-W Topeka, Kansas 66612
Dear Representative Shallenburger:
You have requested our opinion concerning the authority of counties or regional solid waste management entities to assess and expend landfill "tipping fees." As we understand the term, a "tipping fee" is collected from persons who dispose of solid waste at the landfill site, and is calculated on the basis of the volume of solid waste disposed of at the landfill. "Tipping fees" are to be distinguished from solid waste disposal fees authorized by K.S.A. 65-3410(a), which may be assessed against real property within a solid waste service area whether or not the landowner uses any of the solid waste collection and disposal services provided by the county. See Zerr v. Tilton, 224 Kan. 394, 400
(1978); Attorney General Opinions No. 95-21, 95-43, 95-82.
Your specific questions are as follows:
 1. May a county commission assess a landfill tipping fee on solid waste disposed of at landfills owned and operated by the county, assuming fee receipts are deposited in a separate account to be used exclusively for financing the county's solid waste management plan?
 2. If so, does the county's authority to assess landfill tipping fees extend to landfills located within the county that are owned or operated by a private entity or city?
 3. If a county is a member of a regional solid waste management entity established under K.S.A. 65-3405(a) and the interlocal cooperation act, K.S.A. 12-2901 et seq., may the county authorize the regional entity to impose and collect landfill tipping fees, provided that receipts are held in a separate account and used exclusively for financing the regional solid waste management plan?
 4. If so, may a regional entity use the fee revenues to finance expenses incurred for the benefit of all member counties, such as salaries and other operating costs associated with implementing the solid waste management plan, and matching state grant funds for solid waste management planning?
We initially note that under the home rule powers conferred by K.S.A. 19-101 et seq., a county may levy any type of tax, fee, excise, charge, or other exactment unless the legislature has preempted the field by uniform enactment. See K.S.A. 19-101a(1), 19-117; Executive Aircraft Consulting, Inc. v. City of Newton,252 Kan. 421, 424 (1993).
Since 1992, all operators of solid waste disposal areas are required to pay a state solid waste tonnage fee on each ton or equivalent volume of solid waste disposed of at the site. See
K.S.A. 1994 Supp. 65-3415b, as amended by L. 1995, ch. 221, sec. 5. The term "solid waste disposal area" is broadly defined to mean "any area used for the disposal of solid waste from more than one residential premise, or one or more commercial, industrial, manufacturing or municipal operations," and therefore includes landfills. See K.S.A. 1994 Supp. 65-3402(d), as amended by L. 1995, ch. 221, sec. 1. Revenues from state solid waste tonnage fees are collected by the department of health and environment and deposited in the state solid waste management fund. K.S.A. 1994 Supp. 65-3415a(a), (b)(1), as amended by L. 1995, ch. 221, sec. 3. Moneys in the fund may be expended solely for state grants to local entities for solid waste management planning activities, state monitoring and investigation of local solid waste management plans, and other specified state expenses associated with solid waste management functions, including postclosure monitoring and cleanup costs under certain circumstances. See K.S.A. 1994 Supp.65-3415a(c)(1)-(11), (g), as amended by L. 1995, ch. 221, sec. 3.
In 1994, the legislature enacted a separate statute authorizingcounties to impose solid waste tonnage fees. K.S.A. 1994 Supp.65-3415f(b) generally authorizes any county to impose a solid waste tonnage fee for each ton or equivalent volume of solid waste disposed of at any solid waste disposal area operated by the county. We note, however, that several significant categories of solid waste listed in the statute are specifically exempt from application of both state and locally assessed solid waste tonnage fees. See K.S.A. 1994 Supp. 65-3415b(c)(1)-(6), as amended by L. 1995, ch. 221, sec. 5; K.S.A. 1994 Supp. 65-3415f(b)(1)-(6).
Solid waste tonnage fees imposed by a county must be collected and deposited in a special fund in the county treasury, and if fees are imposed at more than one disposal area a separate fund must be maintained for receipts from each disposal area. K.S.A. 1994 Supp. 65-3415f(c). The statute restricts the expenditure of county solid waste tonnage fee receipts as follows:
 "Money in the fund shall be used only for payment of costs of closure, postclosure actions and contamination remediation associated with the solid waste disposal area until the secretary [of health and environment] determines that all requirements for closure, postclosure actions and contamination remediation associated with the disposal area have been met." K.S.A. 1994 Supp. 65-3415f(c).
Furthermore, transfer or expenditure of such moneys for any other purpose is a criminal offense and is grounds for forfeiture of public office. K.S.A. 1994 Supp. 65-3415f(e).
Previous opinions issued by this office have interpreted the solid waste management act, K.S.A. 65-3401 et seq., to be uniformly applicable to all counties, and consequently a county may not exercise its home rule powers to exempt itself from the requirements of the act. See Attorney General Opinions No. 80-65, 80-221, 84-97. On the other hand, Attorney General Stephan concluded that the statutory authority of counties to assess solid waste disposal fees against real property in the manner set forth in K.S.A. 65-3410 does not preclude a county from exercising its home rule powers to assess an ad valorem tax to finance the costs of its solid waste collection system. See Attorney General Opinion No. 80-221.
In Blevins v. Hiebert, 247 Kan. 1 (1990), a majority of the Kansas Supreme Court held that enabling legislation is uniformly applicable if it authorizes all cities or counties to perform certain acts, and such statutes implicitly preempt the field of their application absent express exceptions in the statutes or unless the statutes pertain to police power regulations. Id. at 11. In a recent case involving the exercise of city home rule powers to adopt impact fees as a supplemental financing mechanism for highway improvements, the court acknowledged that legislative intent to preempt a particular field should be clearly evident before a municipality's right to exercise home rule is determined to be legislatively precluded. See McCarthy v. City of Leawood,257 Kan. 566, Syl. para. 1-2 (1995). In determining whether the legislature intends to preclude home rule action to adopt alternative financing mechanisms, one statute cannot be considered in isolation, but must be considered in conjunction with other related statutes within the same legislative scheme. See id. at 577-78; see also Blevins, 247 Kan. at 9 (whether state has preempted field depends on language of statutes as well as the purpose and scope of the legislative scheme); Claflin v. Walsh,212 Kan. 1, 8 (1973) (statutes relating to same subject matter, even if enacted at different times, are in pari materia and should be construed together in determining whether they are uniformly applicable).
In our opinion, K.S.A. 1994 Supp. 65-3415f is an enabling statute and is uniformly applicable to all counties to the same extent as K.S.A. 65-3401 et seq. As such, the authorizing legislation preempts the field with regard to the general category of solid waste tonnage fees, including landfill "tipping fees." The legislature has explicitly limited the types of solid waste subject to both state and county-imposed solid waste tonnage fees. Further, the transfer or expenditure of fee revenues generated by county-operated solid waste disposal areas for any purpose not specified in statute constitutes a criminal offense and is grounds for forfeiture of public office. K.S.A. 1994 Supp. 65-3415f(e). Similarly, state-imposed solid waste tonnage fees must be deposited in the state solid waste management fund and are to be spent only for specified purposes, and revenues to the fund are to be held intact and inviolate for those purposes. K.S.A. 1994 Supp. 65-3415a(g), as amended by L. 1995, ch. 221, sec. 3. We think the legislature, by the use of such restrictive language, has clearly expressed its intent that neither the state nor its political subdivisions may impose solid waste tonnage fees except in strict compliance with these statutes. We therefore conclude that the legislature has preempted the area of state and county-imposed solid waste tonnage fees by enacting uniformly applicable enabling statutes, and counties therefore may not exercise their home rule powers to impose landfill tipping fees other than as explicitly authorized and limited by K.S.A. 1994 Supp. 65-3415f.
To summarize our response to your first question, a county is statutorily authorized to impose a "tipping fee" based on the volume of solid waste disposed of at a county-operated landfill. However, receipts must be deposited in a separate fund for each landfill, and expenditures from the fund are statutorily restricted to costs associated with closure, postclosure actions, and contamination remediation associated with that landfill. Consequently, landfill tipping fee revenues may not be expended for the general costs associated with implementing the county's solid waste management plan in compliance with K.S.A. 65-3405.
Your second question is whether the county's authority to assess landfill tipping fees extends to landfills located within the county, but which are operated by a private entity or by a city. The authority conferred by K.S.A. 1994 Supp. 65-3415f(b) explicitly authorizes the imposition of such fees only at "any solid waste disposal area operated by such county." (Emphasis added.) In contrast, K.S.A. 1994 Supp. 65-3415b, as amended by L. 1995, ch. 221, sec. 5, authorizes the state to impose solid waste tonnage fees at "any solid waste disposal area in this state," including landfills operated by private entities and cities. Furthermore, prior to its repeal in 1993, K.S.A. 65-3415d provided for the imposition of a county solid waste tonnage fee on waste generated outside the state and disposed of at solid waste disposal areas "located in such county." Attorney General Stephan concluded in Attorney General Opinion No. 92-111 that K.S.A. 65-3415d was unconstitutional. The legislature repealed K.S.A. 65-3415d in 1993 and later enacted K.S.A. 1994 Supp.65-3415f, which limited the authority of a county electing to impose solid waste tonnage fees to disposal areas "operated by such county."
We think the difference in the wording of the latter two statutes is significant and indicates that the legislature intended to preclude a county from imposing landfill tipping fees at landfills located within the county but operated by a city or private entity. See Boatright v. Kansas Racing Commission, 251 Kan. 240,245-46 (1992) (it is presumed that legislature intended a different meaning when different language is used in the same connection in different parts of a statute). Consequently, we conclude that a particular county may impose solid waste tonnage fees, including landfill tipping fees, only at solid waste disposal areas operated by that county.
Your third question asks whether the county's power to impose such fees may be delegated to a regional solid waste entity established under the interlocal cooperation act, with receipts held in a separate account of the regional solid waste authority and used for purposes of carrying out the regional solid waste management plan. We note that K.S.A. 1994 Supp. 65-3415f(f) specifically provides that two or more counties jointly operating a solid waste disposal area may impose a tonnage fee if the majority of the board of county commissioners of each participating county votes to impose such a fee. However, we assume from the wording of your question that the regional entity you have in mind is not simply a joint effort to operate a particular landfill on a multi-county basis, but rather a separate legal entity established by interlocal agreement to operate the landfill.
Under the interlocal cooperation act, any "public agency," defined by K.S.A. 12-2903 to include any county, may agree with another public agency to jointly or cooperatively carry out their respective functions relating to refuse disposal. See K.S.A.12-2904(a), (b); K.S.A. 65-3405(a). Such an agreement may create a separate legal or administrative entity for the purpose of carrying out the joint undertaking, such as a regional solid waste entity, subject to the specific approval of the agreement by this office. K.S.A. 12-2904(c)(2), (f). In that event, a county's statutory power to impose landfill tipping fees at county-operated landfills may thereby be delegated to and exercised by the regional solid waste entity, if the interlocal agreement specifically provides that the participating county or counties are delegating such powers. See K.S.A. 12-2904(c)(2).
Your fourth and final question is whether a regional solid waste entity may expend landfill tipping fees for general expenses associated with developing and implementing the regional solid waste management plan. The statutory restrictions limiting a county's use of landfill tipping fees apply with equal force to a regional entity created by interlocal agreement. Therefore, the moneys collected from landfill tipping fees could not be used for general expenditures associated with implementing the regional solid waste management plan, because the regional entity would have no more power than the participating local public agencies to use the fee revenues for purposes other than those set forth in K.S.A. 1994 Supp. 65-3415f(c). We conclude that a regional solid waste management entity under the circumstances you describe would not have the power to expend such moneys for staff salaries, office space, equipment, matching grant funds, or any other related expense other than those specifically set forth in K.S.A. 1994 Supp.65-3415f(c).
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 J. Lyn Entrikin Goering Assistant Attorney General
CJS:JLM:LEG:jm