No. 96,838

D<small>ENNIS</small> S<small>TEFFES</small>, d/b/a L<small>AST</small> C<small>ALL</small> and C<small>OYOTES</small>, *Appellant,* v.
C<small>ITY OF</small> L<small>AWRENCE</small>, *Appellee.*

(160 P.3d 843)

Opinion filed June 22, 2007.

*William K. Rork*, of Rork Law Office, argued the cause, and *Wendie C. Bryan*, of the same firm, was with him on the briefs for appellant.

*Toni Ramirez Wheeler*, of Legal Services Department, of City of Lawrence, and *Scott J. Miller*, of the same department, was with her on the brief for appellee.

*Sandra Jacquot*, general counsel, and *Donald L. Moler*, executive director, were on the brief for *amicus curiae* League of Kansas Municipalities.

The opinion of the court was delivered by

NUSS, J.: Bar owner Dennis Steffes was cited for violating the Lawrence city ordinance regulating smoking in public places. He appeals the district court's denial of his request to declare the ordinance invalid and to enjoin its enforcement. Our jurisdiction is pursuant to K.S.A. 20-3018(b) (transfer from the Court of Appeals on Steffes' motion).

The issues on appeal, and this court's accompanying holdings, are as follows:

1. Did the district court err in concluding that K.S.A. 21-4010 does not preempt the ordinance? No.
2. Did the district court err in concluding that ordinance Sections 9-810 and 9-812 are not unconstitutionally vague? No.
3. Did the district court err in denying injunctive relief? No.

As a result, the district court is affirmed.

## FACTS

On May 11, 2004, the City Commission for the City of Lawrence (City) passed Ordinance No. 7782 regulating smoking. The ordinance's stated purpose was to "(1) improve and protect the public's health by eliminating smoking in public places of employment; (2) guarantee the right of nonsmokers to breathe smoke-free air; and (3) recognize that the need to breathe smoke-free air shall have priority over the choice to smoke." The ordinance, which consisted of Sections 9-801 through 9-814, took effect July 1, 2004.

Subject to several exclusions found in Section 9-807, the ordinance prohibited smoking in public places (Section 9-803) and places of employment (Section 9-804). It also imposed certain obligations upon the "owner, manager, or other person having control of such building or other areas where smoking is prohibited . . . ."

On July 18, 2005, Dennis Steffes, business owner of Tremors, Inc., doing business as the bars Coyotes and Last Call, petitioned the district court for declaratory judgment and injunctive relief prohibiting the City from enforcing the ordinance. He argued that the ordinance was both unconstitutionally vague and preempted by state law. The petition recited that Steffes was cited on September 1, 25, 29, and October 23, 2004, for allegedly (1) failing to provide a smoke-free workplace for employees and (2) failing to prohibit smoking inside of a bar. Steffes noted that he was found not guilty in all but one case. He also asserted that he lost "approximately 40% in sales."

On September 20, 2005, the City amended the ordinance. The enforcement Section, 9-810, reads as follows:

"(A) The Fire Chief or his or her designated agent shall be responsible for enforcing the provisions of this Article within the City, but nothing in this section

shall be interpreted to prohibit any other person who would otherwise be lawfully entitled to enforce the provisions of this Article from taking enforcement action under this Article.

"(B) Notice of the provisions set forth in this Article shall be given to all applicants for a City retail liquor or drinking establishment license.

"(C) Any person may register a complaint under this Article to initiate enforcement with the fire chief.

"(D) The Lawrence-Douglas Fire & Medical Department, the Lawrence Police Department, the Lawrence-Douglas County Health Department, and the Codes Enforcement Division of the Department of Neighborhood Resources Department shall, while an establishment is undergoing otherwise mandated inspections, inspect for compliance of this Article.

"(E) Any owner, manager, operator or employee of any premises regulated by this Article shall be responsible for informing persons violating this Article of the provisions through appropriate signage."

The City's September 2005 action also amended the ordinance's violations and penalties Section, 9-812, to read:

"(A) It shall be unlawful for any person who owns, manages, operates or otherwise controls the use of any premises subject to regulation under this Article to fail to comply with all of its provisions.

"(B) It shall be unlawful for any person who owns, manages, operates or otherwise controls any premises subject to regulation under this Article to allow smoking to occur where prohibited by this Article. Any such person allows smoking to occur under this subsection if he or she:

1. has knowledge that smoking is occurring, and;
2. acquiesces to the smoking under the totality of the circumstances.

"(C) It shall be unlawful for any person to smoke in any area where smoking is prohibited by the provisions of this Article.

"(D) Any person who violates any provision of this Article shall be guilty of a misdemeanor, punishable by:

1. A fine not exceeding one hundred dollars ($100.00) for the first violation.
2. A fine not exceeding Two Hundred Dollars ($200.00) for a second violation within a one (1) year period of the first violation.
3. A fine not exceeding Five Hundred Dollars ($500.00) for a third or subsequent violation within a one (1) year period of the first violation.
4. For the purposes of this subsection, the number of violations within a year shall be measured by the date the smoking violations occur."

At the later hearing on Steffes' request for a preliminary injunction, Steffes testified on behalf of his bars. According to Steffes, he had been in business in Lawrence for 22 years, and he had owned Tremors, Inc., since 1996. He also presented evidence of a

decrease in income for Coyotes that occurred after the smoking ordinance went into effect, which he believed was attributable to the ordinance.

Although Steffes did not provide income data for Last Call, he testified that the bar is open fewer nights per week than it was prior to the effective date of the ordinance. He conceded, however, that factors other than the smoking ban could have contributed to the decreased patronage.

Steffes did not provide profitability data for either bar. He claimed, however, that because his expenses usually remained the same, a loss in income would create a loss in profits.

The district court held that Steffes failed to meet any of the requirements for obtaining a temporary injunction. In so ruling, the court specifically held that Steffes had not demonstrated a substantial likelihood of success on the merits, either on the basis of unconstitutional vagueness or preemption by state law:

"The City's smoking laws are clear in what conduct is prohibited: smoking is prohibited in most enclosed spaces and places of employment.
"The City's ordinances supplement the state law by extending the restrictions on smoking to most enclosed public places and places of employment. While the Lawrence ordinances are more stringent than the state regulations, they do not conflict with the state law."

In addition to holding Steffes had failed to demonstrate a substantial likelihood of success on the merits, the court also held that he had failed to establish any of the remaining three requirements for a temporary injunction. On the requirement of irreparable injury, after noting that Steffes failed to introduce evidence of lost profits, the court held that "[t]he evidence submitted was insufficient to establish that the smoking ordinance was the cause of any economic loss suffered."

Steffes filed a motion to reconsider the denial of the temporary injunction. After a full hearing on all the issues, the district court denied Steffes' motion; it also denied on the merits his petition request to declare the ordinance invalid and, consequently, to permanently enjoin its enforcement. Steffes timely appealed.

Additional facts will be provided as necessary.

## ANALYSIS

Issue 1: *The district court did not err in concluding that K.S.A. 21-4010 does not preempt the ordinance.*

Steffes argues that the City was barred from prohibiting smoking in his bars because the state legislature has preempted the local legislation. He particularly points to language in K.S.A. 21-4010(b) that authorizes business proprietors to designate smoking areas on their premises. K.S.A. 21-4010 states:

"(a) No person shall smoke in a public place or at a public meeting except in designated smoking areas.

"*(b) Smoking areas may be designated by proprietors or other persons in charge of public places, except in passenger elevators, school buses, public means of mass transportation and any other place in which smoking is prohibited by the fire marshal or by other law, ordinance or regulation.*

"(c) Where smoking areas are designated, existing physical barriers and ventilation systems shall be used to minimize the toxic effect of smoke in adjacent nonsmoking areas." (Emphasis added.)

While Steffes acknowledges that under K.S.A. 21-4013 a city may enact smoking regulations more stringent than those imposed by the State, he asserts that stringent regulation does not equate to absolute prohibition. K.S.A. 21-4013 states:

"Nothing in this act shall prevent any city or county from regulating smoking within its boundaries, so long as such regulation *is at least as stringent as that imposed by this act.* In such cases the more stringent local regulation shall control to the extent of any inconsistency between such regulation and this act." (Emphasis added.)

Our review of this issue is unlimited because whether a city ordinance is preempted by statute is a question of law, as is the interpretation of statutes and ordinances. *State ex rel. Kline v. Board of Comm'rs of Unified Gov't of Wyandotte Co./KC,* 277 Kan. 516, 519, 85 P.3d 1237 (2004) (preemption); *City of Wichita v. Hackett,* 275 Kan. 848, 850, 69 P.3d 621 (2003) (interpretation of statutes and ordinances).

A short review of the basis for Steffes' preemption argument is in order. The Home Rule Amendment to the Kansas Constitution provides that cities are empowered to determine their local affairs and government by ordinance passed by the city governing body.

Kan. Const. art. 12, § 5(b). The Amendment also provides that the "[p]owers and authority granted cities pursuant to this section shall be liberally construed for the purpose of giving to cities the largest measure of self-government." Kan. Const. art. 12, § 5(d). Because of its appearance in a constitutional amendment, the city Home Rule power is considered to be granted directly by the people. *Clark v. City of Overland Park,* 226 Kan. 609, 614, 602 P.2d 1292 (1979).

A city's Home Rule powers are not unlimited, however. Quoting Heim, *Home Rule: A Primer,* 74 J.K.B.A. 26, 32 (2005), Steffes specifically observes that like the instant case, "[i]f there is a uniform law applicable to all cities or counties and the uniform law does not contain language expressly preempting local legislation, *the question arises whether home rule supplemental action conflicts with the state law."* (Emphasis added.) He then cites Heim for articulating the conflict test: "The test is whether local law permits an activity prohibited by state law or whether it prohibits an activity authorized by state law; if so, there is a conflict." After providing this general background, Steffes narrows the precise preemption issue for our determination: "whether local law prohibits an activity authorized by state law." He argues that the City ordinance prohibits an activity authorized by K.S.A. 21-4010, and the ordinance is therefore preempted. We disagree.

The fundamental rule to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained. *Johnson v. Westhoff Sand Co., Inc.,* 281 Kan. 930, Syl. ¶ 14, 135 P.3d 1127 (2006). We must give effect to that intent, which the legislature is initially presumed to have expressed through the language it used. When language is plain and unambiguous, there is no need to resort to statutory construction. An appellate court merely interprets the language as it appears; it is not free to speculate and cannot read into the statute language not readily found there. *Board of Leavenworth County Comm'rs v. Whitson,* 281 Kan. 678, 685, 132 P.3d 920 (2006).

We primarily reject Steffes' conflict-based preemption argument because of the plain language in K.S.A. 21-4010(b). In allowing a proprietor to designate smoking areas "except in . . . any . . .

place in which smoking is prohibited by . . . ordinance," the legislature impliedly acknowledges that through an ordinance, a city can prohibit smoking in public places. With ordinance No. 7782, the City has done precisely that. Accordingly, there can be no conflict between state and local law; further analysis would appear to be unnecessary.

Steffes suggests, however, that a city's power to prohibit smoking is limited to transportation areas, citing language in 21-4010(b) regarding passenger elevators, school buses, and public means of mass transportation. The statute's clear language belies his interpretation: "*and any other place* in which smoking is prohibited." (Emphasis added.)

We also hold that rather than supporting Steffes—as he asserts—K.S.A. 21-4013 actually undermines his position. We initially observe that there the legislature has *expressly* acknowledged that cities may regulate smoking: "Nothing in this act shall prevent any city or county from regulating smoking within its boundaries." K.S.A. 21-4013. Indeed, the legislature only demands that "such regulation is at least as stringent as that imposed by this act [K.S.A. 21-4009 *et seq.*]." K.S.A. 21-4013.

We conclude that under this statute, the legislature has invited cities to regulate smoking in public places to the maximum extent possible, *e.g.*, "the more stringent local regulation shall control to the extent of any inconsistency between such regulation and this act." K.S.A. 21-4013. In our view, "stringent regulation" can certainly include "absolute prohibition," *i.e.*, the most stringent regulation of all. Stated another way, the legislature has set a floor, but not a ceiling, for how much a city should regulate smoking. See also *Grove v. Northeast Ohio Nephrology Associates, Inc.*, 164 Ohio App. 3d 829, 837, 844 N.E.2d 400 (2005) (the regulation "is more stringent because it prohibits use or disclosure of health information when such use or disclosure would be allowed under HIPAA").

We further reject Steffes' attempt to limit the legislature's use of "stringent" by excluding "prohibition" because his interpretation would certainly contradict the legislature's acknowledgment of the

cities' authority contained in K.S.A. 21-4010: prohibition of smoking by ordinance.

In short, nothing asserted by Steffes supports a conclusion for conflict-based preemption. His brief quotes Heim: "The test most frequently cited to determine whether a conflict exists is found in *City of Junction City v. Lee*[, 216 Kan. 495, 532 P.2d 1292 (1975)]." 74 J.K.B.A. at 32. However, Steffes' brief cuts off this commentator's discussion too soon, omitting the sentence that immediately followed: "Where both a local law and the statute are prohibitory and the local law goes further in its prohibition but not counter to the state prohibition, there is no conflict." 74 J.K.B.A. at 32.

Indeed, *City of Junction City v. Lee,* 216 Kan. 495, actually supports the City. There, the City of Junction City passed an ordinance outlawing the carrying of certain weapons, while the State only outlawed the carrying of the weapons concealed. Although the ordinance prohibited a particular activity, this court found no conflict between state and local law that invalidated the ordinance. Similarly, in *City of Wichita v. Hackett,* 275 Kan. 848, the City of Wichita passed an ordinance outlawing bicycle driving under the influence (DUI), while the State only outlawed motor vehicle DUI. In this case of outright prohibition, this court again found no conflict invalidating the ordinance.

Issue 2: *The district court did not err in concluding that ordinance Sections 9-810 and 9-812 are not unconstitutionally vague.*

Steffes next argues that the City's ordinance is unconstitutionally vague. We understand him to complain of three different failures of specificity: (1) the requisite intent for committing a violation, (2) the type of conduct prohibited, and (3) the requisite level of enforcement by a club owner. Purported failures two and three will be addressed together.

*Standard of review and general court considerations*

This court's review of a constitutional challenge to an ordinance is de novo. *Hackett,* 275 Kan. at 853. We explained in *Hackett,* however, that the party asserting unconstitutionality has a weighty burden. This is because an appellate court has a duty to preserve the validity of an ordinance and to search for ways to uphold its

constitutionality. We must presume that the ordinance is constitutional, resolve all doubts in favor of validity, and uphold the ordinance if there is any reasonable way to construe it as constitutional; before striking the ordinance, we must conclude that it clearly appears to be unconstitutional. See 275 Kan. at 853 (citing *Boyles v. City of Topeka*, 271 Kan. 69, 72, 21 P.3d 974 [2001]).

The *Hackett* court also explained that constitutional attacks based upon vagueness require additional considerations. First, the ordinance must convey sufficient definite warning and fair notice as to the prohibited conduct in light of common understanding and practice. " 'A statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process.' Kansas has long held, however, that a statute will not be declared void for vagueness and uncertainty where it employs words commonly used, previously judicially defined, or having a settled meaning in law." 275 Kan. at 853-54.

Second, in addition to asking whether the proscribed conduct is adequately defined and provides fair notice, this court has recognized that the ordinance must also adequately guard against arbitrary and discriminatory enforcement. *Hackett*, 275 Kan. at 854.

When making either inquiry, this court should bear in mind that " ' "[t]he standards of certainty in a statute punishing criminal offenses are higher than in those depending primarily upon civil sanctions for enforcement." ' [Citation omitted.]" 275 Kan. at 854.

In *Hackett* we also discussed the rationale for the two inquiries:

" 'First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.' [Citation omitted.]" *Hackett*, 275 Kan. at 854.

With this background, we now turn to the merits of Steffes' arguments.

*Intent*

Steffes argues that the ordinance, particularly Section 9-812(B), is unconstitutionally vague because intent, although an essential element of every crime, is not adequately articulated by the ordinance. Under Section 9-812, the person who owns, manages, operates, or otherwise controls regulated premises cannot allow smoking there. That section then identifies the phrase "allow smoking": "Any such person allows smoking to occur under this section if he or she 1 has knowledge that smoking is occurring, and 2 acquiesces to the smoking under the totality of the circumstances." Steffes finds vagueness in the "has knowledge" requirement. We disagree.

As amicus the League of Kansas Municipalities points out, a criminal or evil intent is not mandatory for an offense:

" '[T]he legislature may, for protection of the public interest, require persons to act at their peril, and may punish the doing of a forbidden act without regard to the knowledge, intention, motive, or moral turpitude of the doer. There is no constitutional objection to such legislation, the necessity for which the legislature is authorized to determine.' " *State v. Logan*, 198 Kan. 211, 216, 424 P.2d 565 (1967) (quoting *State v. Avery*, 111 Kan. 588, 590, 207 P.2d 838 [1922]).

Moreover, simply requiring "has knowledge" is sufficient. *State v. Neighbors*, 21 Kan. App. 2d 824, 827, 908 P.2d 649 (1995), is of guidance. There, the defendant argued that K.S.A. 21-4201 was vague because it failed to specify the requisite intent. The Court of Appeals, however, determined that the statute was not vague because it required proof of conduct performed "knowingly." The court concluded that "knowing" is one of the terms included within "intentional." 21 Kan. App. 2d at 827. Under the rationale of *Neighbors*, we conclude that the ordinance's "has knowledge" requirement adequately states the requisite intent.

Steffes also appears to argue that there is no evidence that he knowingly or intentionally failed to comply with the ordinance: "Steffes took every precaution in order to prevent employees or any members of the public from smoking in his establishments." However, this argument appears to be one more properly for the trier of fact on the issue of the sufficiency of the evidence to convict rather than a constitutional attack for vagueness.

*The prohibited conduct and enforcement*

Steffes next argues that the ordinance is unconstitutionally vague because it fails to specify what conduct is prohibited on his part.

Steffes takes issue with both "allow" and the "acquiesces to the smoking under the totality of the circumstances" language in Section 9-812(B). He argues, "[I]t is totally unclear as to what exactly a person must do to 'allow smoking to occur,' other than know that it is occurring. Acquiescing to smoking under the totality of circumstances is vague." According to Steffes, the provision is vague because "[l]awyers and judges disagree as to what is meant by the totality of the circumstances." Consequently, he argues that "the language set forth in 9-812(B) is confusing to reasonable and ordinary people. It does not give fair warning of what is required to remain violation free." We disagree.

A statute or ordinance will not be declared void for vagueness and uncertainty where it employs words commonly used or having a settled meaning in law. *Hackett,* 275 Kan. at 853-54. "Acquiesce" is a word commonly used and is defined as "[t]o accept tacitly or passively; to give implied consent to (an act)." Black's Law Dictionary 24 (8th ed. 2004). "Totality of the circumstances," although not having a singular settled meaning in the law, is a test commonly used by law enforcement, as well as attorneys and judges. Certainly it would suggest to a person of common intelligence that many factors could be considered together in determining what constitutes "allowing smoking" under the ordinance.

*City of Topeka v. Mayer,* 16 Kan. App. 2d 567, 826 P.2d 527, *rev. denied* 250 Kan. 804 (1992), is of guidance. There, a dog owner was convicted of violating an ordinance making it unlawful for an owner to "permit" a dog to attack when the attack occurred off of the dog owner's premises. The dog owner asserted that the ordinance was unconstitutionally vague because it did not adequately define "permit," similar to Steffes' argument in the instant case regarding "allow." 16 Kan. App. 2d at 569-70. In upholding the ordinance, the Court of Appeals noted that permit "commonly means to give consent, to authorize, to make possible, or to give an opportunity." 16 Kan. App. 2d at 570. The court concluded:

"While the ordinance may be imprecise, it gives sufficient warning to a person of average intelligence that a person responsible for a dog will be held liable if he or she *allows* the dog to attack another person. This is sufficient to withstand a constitutional challenge; the ordinance passes constitutional muster." (Emphasis added.) 16 Kan. App. 2d at 570.

We conclude that Section 9-812(B) provides sufficient warning to a person of common intelligence that one who owns, manages, or operates a public place may violate the ordinance if he or she knowingly *allows, i.e.,* tacitly, passively or, even explicitly accepts, smoking on the premises. As the City argues:

"A person in control of property does not have to explicitly give permission for someone to illegally smoke in an area in order for the person in control of the area to violate the law. On the other hand, the mere fact that someone is smoking in an owner's business does not subject that owner to liability without some direct or circumstantial evidence that the owner knew a person was smoking and he or she tacitly, passively or explicitly permitted the smoking to occur."

As part of Steffes' discussion on the ordinance's purported failure to specify conduct prohibited on his part, he also asserts that the ordinance fails to specify what action is required of a business owner upon discovering a violation. Specifically, he opines that "[w]here there is an absent owner, who tells his business manager to announce over the microphone that there is no smoking allowed in the establishment, and no smoking signs are posted, the owner has done everything he is required to do." Steffes maintains that at that point, enforcement is up to the fire marshal, because a business owner "cannot prevent the isolated individuals who refuse to follow the law, from *doing what they are going to do.*" (Emphasis added.) We again disagree.

Although the ordinance does not provide a comprehensive "how to" guide, enforcement is not vague when the ordinance conveys sufficient definite warning and fair notice in light of common understanding and practice. *Hackett,* 275 Kan. at 853. The ordinance prohibits acquiescence "under the totality of the circumstances." Many circumstances may be considered in this determination; common understanding and practice play a large role.

For example, a court would consider whether acquiescence exists when a bar owner observes a patron smoking, asks him to stop,

and after he politely refuses, the owner does nothing further. A court would also consider whether acquiescence exists under these same circumstances except the patron, instead of politely refusing to stop smoking, sticks a handgun in the owner's face and threatens to shoot if enforcement efforts continue. If the owner then did nothing further, a court would be much more likely than in the earlier example to find no violative acquiescence. Simply put, the owner must take enforcement efforts that a court would conclude did not establish acquiescence under all the circumstances—a task for which the courts are well suited. *See State v. Swanigan,* 279 Kan. 18, 44, 106 P.3d 39 (2005) (voluntariness of confession determined by totality of the circumstances); *State v. James,* 276 Kan. 737, 749, 79 P.3d 169 (2003) (determination of whether interrogation is custodial based upon totality of circumstances); *State v. Rexroat,* 266 Kan. 50, 54-55, 966 P.2d 666 (1998) (voluntariness of consent to search determined by totality of circumstances).

We conclude that Steffes' vagueness argument fails. The City's ordinance conveys sufficient definite warning and fair notice as to the prohibited conduct in light of common understanding: allowing smoking in prohibited places by knowledge that it is occurring and acquiescence to it as determined under the totality of the circumstances. *Boyles v. City of Topeka,* 271 Kan. 69, 72-73, 21 P.3d 974 (2001). The ordinance also conveys sufficient clarity to those who apply its standards to protect against arbitrary and discriminatory enforcement. *Hackett,* 275 Kan. at 854.

Issue 3: *The district court did not err in denying injunctive relief.*

Finally, Steffes argues that the district court erred in denying him both temporary and permanent injunctive relief. An appellate court reviews the grant or denial of injunctive relief for an abuse of discretion. *Board of Leavenworth County Comm'rs v. Whitson,* 281 Kan. 678, 683, 132 P.3d 920 (2006). The party alleging the error has the burden of showing the abuse of discretion. 281 Kan. at 683.

Among other reasons, the district court denied Steffes' request for a temporary injunction because he failed to establish a substantial likelihood that he would eventually prevail on the merits.

See *Wichita Wire, Inc. v. Lenox*, 11 Kan. App. 2d 459, 462, 726 P.2d 287 (1986). The court later denied Steffes' request for reconsideration and the request for declaratory and permanent injunctive relief. It adopted and incorporated by reference all findings and conclusions from its earlier order, but also stated, perhaps for renewed emphasis:

"In denying the plaintiff's petition, the Court rejects plaintiff's argument that the City Ordinance is unconstitutionally vague and it is not preempted by State law. Further, the Court finds that the plaintiff's evidence has failed to establish that irreparable injury results to the plaintiff as a result of the enforcement of the ordinance."

The district court's first-stated reason for denying injunctive relief was its rejection of both of Steffes' arguments on the merits: unconstitutionally vague and preempted by state law. Because we affirmed the district court's rejection of these particular arguments on the merits, the inquiry need not proceed on whether the remaining conditions for issuing injunctive relief have been met, as explained below.

One requirement for receiving a temporary injunction is for the plaintiff to establish the "substantial likelihood" of eventually prevailing on the merits. This requirement exists because

"[t]he purpose of a temporary or preliminary injunction is not to determine any controverted right, but to prevent injury to a claimed right *pending a final determination of the controversy on its merits*. The grant of a temporary injunction would not be proper if it would appear to accomplish the whole object of the suit without bringing the cause or claim to trial. A temporary injunction merely preserves the status quo *until a final determination of a controversy can be made*." (Emphasis added.) 11 Kan. App. 2d at 461.

The United States Supreme Court has distinguished the temporary from the permanent injunction in similar terms: "The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that *the plaintiff must show a likelihood of success on the merits rather than actual success*." (Emphasis added.) *Amoco Production Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 546, n.12, 94 L. Ed. 2d 542, 107 S. Ct. 1396 (1987) (citing *University of Texas v. Camenisch*, 451 U.S. 390, 392, 68 L.. Ed. 2d 175, 101 S. Ct. 1830 [1981]).

As a result, to receive a permanent injunction, "the plaintiff must actually succeed on the merits." *Tyler v. Kansas Lottery,* 14 F. Supp. 2d 1220, 1223 (D. Kan. 1998) (citing *Village of Gambell*); see *Automotive Electric Service Corp. v. Assoc. of Automotive Aftermarket Distributors,* 747 F. Supp. 1483, 1513 (E.D.N.Y. 1990) (plaintiff's success on merits is only the first step in determining whether a court should grant permanent injunction); *Rosenberg v. Meese,* 622 F. Supp. 1451, 1476 (S.D.N.Y. 1985) (in deciding whether to grant plaintiff permanent injunctive relief, a court initially inquires as to whether plaintiff has prevailed on merits).

Without such plaintiff success on the merits, the injunctive inquiry may end under Kansas law. *Cf. Empire Mfg. Co. v. Empire Candle, Inc.,* 273 Kan. 72, 86-87, 41 P.2d 798 (2002) (reversed because district court abused its discretion in granting injunctive relief when one of several requirements not met: no other requirements addressed).

We also take this opportunity to clarify Kansas precedent. In *Board of Leavenworth County Comm'rs v. Whitson,* 281 Kan. at 683, the court listed four requirements for obtaining a temporary injunction:

" ' "(1) there is a reasonable probability of irreparable future injury to the movant; (2) an action at law will not provide an adequate remedy; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the injunction, if issued, would not be adverse to the public interest." ' [Citations omitted.]"

There, we observed that our past language in factor one concerning "will suffer irreparable injury" had been incorrectly interpreted to require *virtual certainty* rather than a *reasonable probability. Whitson,* 281 Kan. at 683. In correcting the error, we stated: "Kansas case[s] that ha[ve] cited the *Wichita Wire* language to demand proof of the *certainty* of irreparable harm rather than the mere probability of it have set too high a standard for parties seeking injunctions." 281 Kan. at 684. According to *Whitson,* only a reasonable probability is necessary.

Before *Whitson's* discussion of these four requirements, however, it did not indicate that the plaintiff must first establish a substantial likelihood of success on the merits. Thus, while *Whitson*

clarified one part of *Wichita Wire*, it did not specifically acknowledge that *Wichita Wire* still validly required showing a substantial likelihood of success. Today we affirm this required showing from *Wichita Wire* for obtaining a temporary injunction and establish the required showing of actual success on the merits for obtaining a permanent one.

Affirmed.