Gary A. Anderson Bond Counsel, City of Roeland Park 2405 Grand Boulevard, Suite 1100 Kansas City, Missouri 64108-2521
Dear Mr. Anderson:
As bond counsel for the City of Roeland Park, you ask whether a city may terminate a project plan and adopt a new project plan or whether an existing project plan is amended when a project area with an approved but abandoned project plan is moved from one redevelopment district to a different redevelopment district, different redevelopment projects are intended to be pursued in the transferred area and different revenue sources will be pledged to cover the costs of the projects.
In 1992, the City of Roeland Park utilized its authority under K.S.A.12-1770 et seq. (TIF) to establish Redevelopment District No. 2 (District 2). Four project areas were created within District 2. *Page 2 
In 1997, Redevelopment District No. 3 (District 3) was established. In 2004, the territory included in District 3 was decreased. At that time, two project areas — Area 3A and Area 3C — were created. The project plan for Area 3C was approved in May 2005 and provided for construction of retail, office and green space. Approved redevelopment project costs associated with the project included the costs for site work and landscaping, streetscape and pedestrian improvements and legal work to clear title issues regarding city ownership of the property. All incremental tax revenues generated within Area 3C were pledged to pay the redevelopment project costs. The incremental tax revenues generated in Area 3C have covered the costs of clearing title issues and removing a municipal swimming pool. No other development has taken place.
The city is now considering: (1) terminating the existing project plan for Area 3C; (2) removing Area 3C from District 3 and adding that territory to District 2; (3) modifying the redevelopment district plan for District 2 to provide for a new project area — Area 2E; and (4) adopting a new project plan for Area 2E. The redevelopment projects proposed in the new project plan for Area 2E would be entirely different from the projects outlined in the existing plan for Area 3C and the tax increment revenues generated in District 2, rather than District 3, would be pledged to pay the new redevelopment project costs.
Redevelopment under TIF is pursued through a two-stage process: establishment of a redevelopment district and adoption of a project plan.[1]
The procedure for establishing a redevelopment district requires the city to adopt a resolution stating that the city is considering establishment of a redevelopment district and to provide notice that a public hearing will be held to consider establishment of the district.[2]
The notice includes descriptions of the redevelopment district's proposed boundaries and the district plan.[3] The notice is given in two forms: by mailing copies of the resolution to the board of county commissioners, local board of education and each owner and occupant of land within the proposed redevelopment district; and by publication of the resolution in the official city newspaper.[4] Following the public hearing, the city may adopt an ordinance establishing the redevelopment district.[5] "No privately owned property subject to ad valorem taxes shall be acquired and redeveloped . . . if the board of county commissioners or the board of education levying taxes on such property *Page 3 
determines by resolution adopted within 30 days following the conclusion of the hearing that the proposed redevelopment district . . . will have an adverse effect on such county or school district."[6] If such a resolution is received by the city, the city is required to adopt an ordinance terminating the redevelopment district.[7]
Adoption of a project plan is achieved through a similar procedure. A redevelopment project plan is "the plan adopted by a municipality for the development of a redevelopment project . . . in [an established][8]
redevelopment district."[9] The redevelopment project plan includes "a description and map of the redevelopment project area to be redeveloped"[10] and "a detailed description of the buildings and facilities proposed to be constructed or improved in such area."[11] It is prepared in consultation with the city's planning commission, must be consistent with the comprehensive plan for development of the city and include a summary of the feasibility study.[12] The project plan must be delivered to the board of county commissioners and the local board of education.[13] The city may then adopt a resolution stating its intent to consider adoption of the project plan.[14] Notice of the public hearing at which adoption is to be considered is provided by mailing a copy of the resolution to the board of county commissioners, the local board of education and each owner and occupant of land within the proposed redevelopment project area and by publication of the resolution in the official city newspaper.[15] "Following the public hearing, the governing body may adopt the project plan by ordinance upon a ? vote. . . ."[16]
Through these procedures, the Legislature has ensured that local taxing entities and owners of property within a proposed redevelopment district or redevelopment project area receive personal and published notice of the city's actions, local taxing entities have the opportunity to intervene when the city's actions will have adverse effects, the city's actions are consistent with the comprehensive plan for the development of the city, revenue sources for paying the redevelopment project costs are identified and the benefits and revenues received by the city are sufficient to cover the costs of the redevelopment. *Page 4 
A city has the authority to modify a redevelopment district by adding territory thereto, [17] removing real property therefrom, [18] or transferring real property from one redevelopment district into another.[19] "Any addition of any area to the redevelopment district or . . . any substantial change . . . to the district plan shall be subject to the same procedure for public notice and hearing as is required for the establishment of the redevelopment district. . . ."[20] "Removal of real property from one redevelopment district . . . and addition of all or a portion of that real property to another redevelopment district . . . may be accomplished by the adoption of an ordinance and in such event the determination of the existence or nonexistence of an adverse effect on the county or school district under subsection (d)[21] shall apply to both such removal and such addition of real property to a redevelopment district. . . ."[22]
Likewise, a city is authorized to modify or revise a project plan.[23]
"Any substantial changes . . . to the project plan as adopted shall be subject to a public hearing following publication of notice thereof at least twice in the official city newspaper."[24]
A project plan must be completed within 20 years of the date on which the project plan is approved.[25] If bonds issued to provide financing for redevelopment projects and interest on such bonds have been paid before the completion of a project, the city may continue to use the tax increment revenues for any purpose authorized by TIF until such time as the project is completed, but for not to exceed 20 years from the date of the approval of the project plan, except as otherwise provided by TIF.[26]
With this statutory framework, we review the procedure a city should follow when the city deems that projects designated in an existing project plan are no longer desired or feasible, the project area should be transferred to another redevelopment district, new redevelopment projects for the transferred area should be pursued and new revenue resources are to be pledged to pay the costs of the redevelopment projects. It is our opinion that under such circumstances, a city may through home rule terminate an *Page 5 
existing project plan. The city would then need to follow the procedure set forth in subsections (a) through (e) of K.S.A. 2010 Supp. 12-1772 to adopt a new project plan.
The Home Rule Amendment to the Kansas Constitution[27] provides that cities are empowered to determine their local affairs and government by ordinance passed by the city governing body and that such powers and authority are to be liberally construed for the purpose of giving to cities the largest measure of self-government.[28] The exercise of home rule authority is limited or prohibited only by "enactments of the legislature of statewide concern applicable uniformly to all cities, to other enactments of the legislature applicable uniformly to all cities, to enactments of the legislature applicable uniformly to all cities of the same class limiting or prohibiting the levying of any tax, excise, fee, charge or other exaction and to enactments of the legislature prescribing limits of indebtedness."[29] "Generally speaking, where the legislature has not preempted the field with a uniformly applicable enactment, cities may exercise their home rule power by one of two means. Where there is a nonuniform legislative enactment that is in conflict with the action a city wants to take, a charter ordinance may be used to exempt the city from the legislative enactment. Where there is no legislative enactment in conflict with the local action, an ordinary ordinance will suffice."[30] In addition, the Kansas Supreme Court has recognized that even when there is a uniform state law on the subject, a city may enact ordinary ordinances to supplement the state law, provided the state has not explicitly preempted local action and there is no conflict between the state law and the local addition or supplement.[31]
"An intent on the part of the legislature to retain exclusive jurisdiction to legislate in a given area must be clearly shown. Where such an intention cannot be gathered from the language of the statute itself, whatever extrinsic evidence there may be of prescriptive intent must be clear and convincing before the power to regulate can be said to have been withdrawn from our cities."[32] Home rule allows the city to act when there is no state law on the subject or when the city's action supplements state law.[33]
TIF is uniformly applicable to all cities. The Act, however, does not include any language clearly delineating the Legislature's intent to preempt local action on the subject matter. *Page 6 
Therefore, a city is free to supplement TIF through enactment of an ordinary ordinance, provided the ordinary ordinance does not conflict with TIF.
TIF provides a procedure to be followed when a city proposes substantial changes[34] to a project plan. It does not address outright termination of a project plan. Termination of a project plan does not conflict with any of TIF's provisions. Therefore, a city may exercise home rule authority to provide for termination of a project plan.
Once a city has exercised its home rule authority and terminated a project plan, it will need to follow the procedure set forth in subsections (a) through (e) of K.S.A. 2010 Supp. 12-1772 to adopt a new project plan for the transferred redevelopment project area. By following this procedure, the planning commission may ensure that the new project plan is consistent with the comprehensive plan for the development of the city, a detailed description of the buildings and facilities proposed to be constructed or improved is formulated, a feasibility study identifying revenue sources that provide adequate funding to cover the costs of the proposed projects is completed, the project plan is delivered to the county commission and the board of education, personal notice and published notice of a public hearing regarding adoption of the new project plan are provided to the county commission, board of education and owners and occupants of property within the project area and interested persons are given an opportunity to be heard at the public hearing. If the city is permitted to merely amend the existing project plan, there is no review by the planning commission ensuring consistency with the city's comprehensive plan for development, the county commission and board of education will not receive copies of the project plan and personal notice regarding the public hearing will not be provided to the county commission, board of education and property owners and occupants. The city will then have 20 years from the date of adoption of the new project plan in which to complete the rehabilitation projects.[35]
When a city proposes adoption of a project plan for a project area that was previously subject to a project plan that has been terminated through home rule, there may be concerns regarding whether the city's proposal constitutes substantial changes to the previous plan or is actually a new project plan. Based on the statutory framework of TIF, it appears that the Legislature does not intend to include as "substantial changes" a situation where a city has determined that an existing project plan is no longer desired or *Page 7 
feasible, the project area is transferred to a new redevelopment district, completely different redevelopment projects are proposed and new revenue sources are proposed to cover the costs of the project. Such a determination will depend, however, on the specific facts.
Sincerely,

 Derek Schmidt
 Attorney General of Kansas
 Richard D. Smith
 Assistant Attorney General

DS:AA:RDS:ke
[1] Attorney General Opinion No. 2009-15.
[2] K.S.A. 2010 Supp. 12-1771(a).
[3] Id. The redevelopment district plan is "the preliminary plan that identifies all of the proposed project areas and identifies in a generalmanner all of the buildings, facilities and improvements in each that are proposed to be constructed or improved. . . ." K.S.A. 2010 Supp. 12-1770a(q) (emphasis added).
[4] Id.; see K.S.A. 2010 Supp. 12-1772(c)(2).
[5] K.S.A. 2010 Supp. 12-1771(b).
[6] K.S.A. 2010 Supp. 12-1771(d).
[7] Id.
[8] K.S.A. 2010 Supp. 12-1770a(r).
[9] K.S.A. 2010 Supp. 12-1770a(s).
[10] K.S.A. 2010 Supp. 12-1772(a)(3).
[11] K.S.A. 2010 Supp. 12-1772(a)(5).
[12] K.S.A. 2010 Supp. 12-1772(a) and (b). The feasibility study shows whether the project's benefits and revenue sources are sufficient to pay the redevelopment costs. K.S.A. 2010 Supp. 12-1770a(k).
[13] K.S.A. 2010 Supp. 12-1772(b).
[14] K.S.A. 2010 Supp. 12-1772(b).
[15] K.S.A. 2010 Supp. 12-1772(c)(2).
[16] K.S.A. 2010 Supp. 12-1772(e).
[17] K.S.A. 2010 Supp. 12-1771(e), (f).
[18] K.S.A. 2010 Supp. 12-1771(g), (i).
[19] K.S.A. 2010 Supp. 12-1771(j).
[20] K.S.A. 2010 Supp. 12-1771(f).
[21] Subsection (d) of K.S.A. 2010 Supp. 12-1771 requires the city to terminate a redevelopment district when the county commission or board of education determines the redevelopment district will have an adverse effect on such county or school district.
[22] K.S.A. 2010 Supp. 12-1771(j).
[23] See K.S.A. 2010 Supp. 12-1776(a).
[24] K.S.A. 2010 Supp. 12-1772(f).
[25] K.S.A. 2010 Supp. 12-1772(g).
[26] K.S.A. 2010 Supp. 12-1775(b)(2).
[27] Kan. Const., Art. 12, § 5.
[28] Steffes v. City of Lawrence, 284 Kan. 380, 385-86 (2007).
[29] Kan. Const., Art. 12, § 5(b).
[30] State ex rel. Kline v. Unified Board of Comm'rs, 277 Kan. 516, 520
(2004), quoting Kansas City Renaissance Festival Corp. v. City of BonnerSprings, 269 Kan. 670, 673 (2000).
[31] Heim, Home Rule: A Primer, The Journal of the Kansas Bar Association, January 2005.
[32] Hutchinson Human Relations Comm' v. Midland Credit Mgmt.,Inc., 213 Kan. 308, 315 (1973).
[33] Heim, Home Rule: A Primer, The Journal of the Kansas Bar Association, January 2005.
[34] "Substantial change" means, as applicable, a change wherein the proposed plan or plans differ substantially from the intended purpose for which the district plan or project plan was approved. K.S.A. 2010 Supp.12-1770a(t).
[35] Attorney General Opinion No. 2009-15. *Page 1