IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 119,269

DWAGFYS MANUFACTURING, INC.,
d/b/a The Vapebar Topeka, and Puffs 'n' Stuff, L.L.C.,
*Appellees*,

v.

CITY OF TOPEKA, KANSAS,
a Municipal Corporation,
*Appellant.*

SYLLABUS BY THE COURT

1.

A city may adopt ordinary ordinances when no state law exists on the subject or when a uniform law applicable to all cities exists on the subject but the Legislature has not expressed a clear intent to preempt the field and there is no conflict between the state and local law.

2.

Legislative intent to preempt the field must be clearly manifested on the face of the statute. Courts will not find legislative preemption by implication.

3.

The provisions of K.S.A. 79-3301 et seq., do not show a clear manifestation of intent by the Legislature to prohibit cities from enacting ordinances on the same subject.

1

4.

When the Legislature has enacted a statute without preempting cities from acting in the same area, the ordinance will stand as long as the ordinance does not conflict with the statute.

5.

In order for an actual conflict to exist, the state statute must expressly authorize what the ordinance prohibits, or expressly prohibit what the ordinance authorizes.

6.

Ordinance No. 20099 does not conflict with K.S.A. 79-3301 et seq., because it does not prohibit what the statute expressly authorizes, nor does it expressly authorize what the statute prohibits.

Appeal from Shawnee District Court; FRANKLIN R. THEIS, judge. Opinion filed June 28, 2019. Reversed.

*Mary Feighny*, deputy city attorney, argued the cause and was on the brief for appellant.

*Robert E. Duncan II*, of Topeka, argued the cause and was on the briefs for appellees.

*Amanda L. Stanley*, general counsel, was on the brief for amicus curiae League of Kansas Municipalities.

*Jeffrey A. Chanay*, chief deputy attorney general, *Toby Crouse*, solicitor general, *Dwight R. Carswell*, assistant solicitor general, *Bryan C. Clark*, assistant solicitor general, and *Derek Schmidt*, attorney general, were on the brief for amicus curiae State of Kansas.

*Miriam E.C. Bailey*, of Polsinelli, PC, of Kansas City, Missouri, and *Dennis A. Henigan*, of Washington, D.C., were on the brief for amicus curiae Greater Kansas City Chamber of Commerce, The

Campaign for Tobacco-Free Kids, and Certain Other Public Health, Medical, and Community Organizations.

*W. Robert Alderson*, of Alderson, Alderson, Conklin, Burghart, Crow & Slinkard, L.L.C., of Topeka, was on the brief for amicus curiae Petroleum Marketers and Convenience Store Association of Kansas.

The opinion of the court was delivered by

STEGALL, J.: The City of Topeka passed Ordinance No. 20099, amending Uniform Public Offense Code § 5.7 (2015) making it unlawful for any person to: "(1) Sell, furnish or distribute cigarettes, electronic cigarettes, tobacco products or liquid nicotine to any person under 21 years of age; or (2) Buy any cigarettes, electronic cigarettes, tobacco products or liquid nicotine for any person under 21 years of age." The day before the Ordinance was to take effect, DWAGFYS Manufacturing, Inc., d/b/a The Vapebar Topeka, and Puffs 'n' Stuff, L.L.C. sued Topeka seeking to prevent enforcement of the Ordinance. Vapebar argued the Ordinance was unconstitutional under article 12, section 5 of the Kansas Constitution because it impermissibly conflicted with and was preempted by the Kansas Cigarette and Tobacco Products Act, K.S.A. 79-3301 et seq., referred to as the Act. Additionally, Vapebar argued the Ordinance exceeded Topeka's police power authority.

The district court issued a temporary restraining order and eventually a permanent injunction. Topeka appealed and moved to transfer the case to this court. Topeka asked us to consider: (1) whether the Act preempts Topeka from prohibiting retailers from selling cigarettes, electronic cigarettes, tobacco products, and liquid nicotine to persons under the age of 21 years; and (2) whether the Ordinance conflicts with the Act. We granted Topeka's motion to transfer and now hold the Ordinance is not preempted by and does

3

not conflict with the Act. Thus, the Ordinance is a constitutionally valid exercise of Topeka's home rule power under article 12, section 5 of the Kansas Constitution.

ANALYSIS

Topeka sought to join other Kansas cities in making it unlawful for retailers to sell, furnish, or distribute cigarettes, electronic cigarettes, tobacco products, or liquid nicotine to any person under 21 years old. The Ordinance passed by Topeka provided, in part:

"(2) Section 5.7 of UPOC [Uniform Public Offense Code] 2015, relating to selling, giving or furnishing cigarettes or tobacco products to a minor is hereby deleted and the following language is substituted therefor:

"(a) It shall be unlawful for any person to:

(1) Sell, furnish or distribute cigarettes, electronic cigarettes, tobacco products or liquid nicotine to any person under 21 years of age; or

(2) Buy any cigarettes, electronic cigarettes, tobacco products or liquid nicotine for any person under 21 years of age.

"(b) It shall be a defense to a prosecution under this section if:

(1) The defendant is a licensed retail dealer, or employee thereof, or a person authorized by law to distribute samples;

(2) The defendant sold, furnished or distributed the cigarettes, electronic cigarettes, tobacco products, or liquid nicotine to the person under 21 years of age with reasonable cause to believe the person was of legal age to purchase or receive cigarettes, electronic cigarettes, tobacco products or liquid nicotine; and

4

(3) To purchase or receive the cigarettes, electronic cigarettes, tobacco products or liquid nicotine, the person under 21 years of age exhibited to the defendant a driver's license, Kansas non driver's identification card or other official or apparently official document containing a photograph of the person and purporting to establish that the person was of legal age to purchase or receive cigarettes, electronic cigarettes, tobacco products or liquid nicotine.

(4) For purposes of this section the person who violates this section shall be the individual directly selling, furnishing or distributing the cigarettes, electronic cigarettes, tobacco products or liquid nicotine to any person under 21 years of age or the retail dealer who has actual knowledge of such selling, furnishing or distributing by such individual or both.

"(c) It shall be a defense to a prosecution under this subsection if:

(1) The defendant engages in the lawful sale, furnishing or distribution of cigarettes, electronic cigarettes, tobacco products or liquid nicotine by mail; and

(2) The defendant sold, furnished or distributed the cigarettes, electronic cigarettes, tobacco products or liquid nicotine to the person by mail only after the person had provided to the defendant an unsworn declaration, conforming to K.S.A. 53-601 and amendments thereto, that the person was 21 or more years of age.

"(d) The words and phrases in Section 5.7 of UPOC 2015 shall have the same meanings as defined in K.S.A. 79-3301, and amendments thereto. 'Liquid nicotine' shall mean the active ingredient of the tobacco plant (nicotine) in liquefied form suitable for the induction of nicotine, whether by nasal spray, ingestion, smoking or other means, into the human body. 'Sale' shall mean any transfer of title or possession or both, exchange, barter, distribution or gift of cigarettes, electronic cigarettes, tobacco products or liquid nicotine with or without consideration.

"(f) [sic] Violation of this section shall constitute a Class B violation punishable by a minimum fine of $200."

5

According to Vapebar, the Ordinance is unconstitutional because it "impermissibly conflicts with and is therefore preempted by uniform state law [the Act] under the Home Rule Amendment to the Kansas Constitution, Article 12, §5(b)."

The Act, in relevant part, provides:

"It shall be unlawful for any person:

. . . .

"(l) To sell, furnish or distribute cigarettes, electronic cigarettes or tobacco products to any person under 18 years of age.

"(m) Who is under 18 years of age to purchase or attempt to purchase cigarettes, electronic cigarettes or tobacco products.

"(n) Who is under 18 years of age to possess or attempt to possess cigarettes, electronic cigarettes or tobacco products." K.S.A. 2018 Supp. 79-3321(l)-(n).

The district court found "conflicts between the city ordinance . . . and state law" and enjoined enforcement of the Act on that basis. As such, the lower court declined to rule on Vapebar's police power claim and dismissed it without prejudice.

The preemption and conflict issues raised in this appeal derive from article 12, section 5 of the Kansas Constitution—also known as the home rule amendment. Taking effect in 1961, the home rule amendment empowered local governments to determine their local affairs and government by ordinance. Kan. Const. art. 12, § 5(b); *Steffes v. City of Lawrence*, 284 Kan. 380, 385, 160 P.3d 843 (2007). Following the amendment, cities no longer had to rely on the Legislature to specifically authorize the exercise of a

6

particular power or action via statute. The amendment further provided that the "[p]owers and authority granted cities pursuant to this section shall be liberally construed for the purpose of giving to cities the largest measure of self-government." Kan. Const. art. 12, § 5(d).

Cities exercise this power through charter or "ordinary" ordinances. Kan. Const. art. 12, § 5(b) and (c); see also Heim, *Home Rule: A Primer*, 74 J.K.B.A. 26, 31 (January 2005). Here, the parties agree the Ordinance is an ordinary ordinance. A city may adopt ordinary ordinances when no state law exists on the subject or when a uniform law applicable to all cities exists on the subject but the Legislature has not expressed a clear intent to preempt the field and there is no conflict between the state and local law. *City of Wichita v. Hackett*, 275 Kan. 848, 851-52, 69 P.3d 621 (2003).

Thus, to determine whether an ordinary ordinance is a valid exercise of home rule power courts must ask: (1) Is there a state law that governs the subject? (2) If there is a state law, is it uniformly applicable to all cities? (3) If there is a uniform state law, does it preempt further action by cities? and (4) If there is a uniform state law but there has been no preemption, does the local regulation conflict with the uniform state law? See Heim, *Home Rule Power for the Cities and Counties in Kansas*, 66 J.K.B.A. 26, 32 (1997).

The first two questions are not in dispute. The parties agree that the Act and the Ordinance govern the same subject—i.e., the regulation of cigarettes, electronic cigarettes, tobacco products, and liquid nicotine in Kansas. The parties also agree that the Act is a uniform state law applicable to all cities. Thus, we must resolve the latter two questions—preemption and conflict. We exercise unlimited review over constitutional challenges. *Steffes*, 284 Kan. at 388-89. To the extent this constitutional inquiry requires us to engage in statutory interpretation, our review is likewise unlimited. *Hackett*, 275 Kan. at 850.

7

Vapebar asks us to find that the Legislature preempted the field of tobacco regulation when it passed the Act. But there is no express statement of preemption in the Act, and since 1961, we have consistently rejected the doctrine of implied legislative preemption. See *McCarthy v. City of Leawood*, 257 Kan. 566, 584, 894 P.2d 836 (1995); *City of Junction City v. Griffin*, 227 Kan. 332, 336, 607 P.2d 459 (1980); *Garten Enterprises, Inc. v. City of Kansas City*, 219 Kan. 620, Syl. ¶ 3, 549 P.2d 864 (1976); *City of Junction City v. Lee*, 216 Kan. 495, 503, 532 P.2d 1292 (1975); *City of Lyons v. Suttle*, 209 Kan. 735, 738, 498 P.2d 9 (1972). Instead, we have held that legislative intent to reserve exclusive jurisdiction to the state must be clearly manifested by statute—i.e., by expressly prohibiting cities from enacting any type of ordinance related to the state law. *Zimmerman v. Board of Wabaunsee County Comm'rs*, 289 Kan. 926, 973, 218 P.3d 400 (2009).

To avoid application of this caselaw, Vapebar first points us to our decision in *Trimble v. City of Topeka*, 147 Kan. 111, 75 P.2d 241 (1938), suggesting that the Legislature may implicitly preempt even without an express statement of intent. *Trimble*, of course, was decided long before the home rule amendment. Prior to 1961, the general rule was that "the superior power is with the state" and "the city's only power is that delegated to it by the state." *Trimble*, 147 Kan. at 114. In other words, unless the statute expressly granted cities a right to act, it was presumed the state had preempted the field. After the amendment, however, cities no longer need a legislative delegation of power. Rather, cities are "empowered to determine their local affairs" and courts are to construe this power "liberally . . . for the purpose of giving to cities the largest measure of self-government." Kan. Const. art. 12, § 5(b) and (d). Legislative silence is no longer sufficient to imply state preemption. Rather, ""legislative intent to reserve to the state exclusive jurisdiction to regulate an area *must be clearly manifested by statute* before it can be held that the state has withdrawn from the cities the power to regulate in the

8

field."'" *McCarthy*, 257 Kan. at 584 (quoting *Garten Enterprises, Inc.*, 219 Kan. 620, Syl. ¶ 3).

Here, the Act does not manifest a clear intent to preempt cities from action. The language of the Act is plain and unambiguous and we "merely interpret[] the language as it appears"—we are "not free to speculate and cannot read into the statute language not readily found there." *Steffes*, 284 Kan. at 386. Moreover, the Legislature knows how to expressly preempt city home rule power but did not do so here. See, e.g., K.S.A. 2018 Supp. 75-5174(a) ("The power to regulate, license and tax the management, operation and conduct of and participation in games of bingo and raffles is *hereby vested exclusively in the state*." [Emphasis added.]). In fact, some provisions of the Act seem to contemplate cities enacting ordinances covering at least some of the same conduct. See K.S.A. 2018 Supp. 79-3393(c) ("Acts classified as cigarette or tobacco infractions by K.S.A. 79-3322[d], and amendments thereto, shall be classified as ordinance cigarette or tobacco infractions by those cities adopting ordinances prohibiting the same acts. The fine for an ordinance cigarette or tobacco infraction shall be $25.").

Vapebar suggests that perhaps the Legislature's enactment of a "comprehensive scheme" of regulation is sufficient to clearly manifest an intent to preempt the field. We disagree. We have already rejected the idea that the Legislature's adoption of a comprehensive scheme can establish a clear intent to preempt the field. See *Lee*, 216 Kan. at 502-04. In *Lee*, the defendants relied on a Judicial Council comment that described the state weapons control act as "'a comprehensive weapons control act.'" 216 Kan. at 503. Rejecting this argument for preemption, we held that "[l]egislative intent to preempt is not to be so simplistically found. . . . Absent clear expression to that effect, we cannot conceive that the legislature intended by its enactment, comprehensive though it be, to exclude cities' traditional resources" from protecting its citizens' well-being. 216 Kan. at 503.

Next, Vapebar directs us to *State ex rel. Schneider v. City of Kansas City*, 228 Kan. 25, 612 P.2d 578 (1980), for authority. Our decision in *Schneider*, however, is distinguishable because it only questioned whether the home rule amendment authorized Kansas City to enforce its building permit and code ordinances upon the Board of Regents, which derives its authority from article 6, section 2(b) of the Constitution. Given these unique circumstances and the interplay between the two constitutional provisions, the *Schneider* court limited its holding "to the parties and factual situation before us." *Schneider*, 228 Kan. at 33; see also *State ex rel. Kline v. Board of Comm'rs of Unified Gov't of Wyandotte Co./KC*, 277 Kan. 516, 85 P.3d 1237 (2004) (refusing to recognize *Schneider* as applicable precedent). *Schneider* is inapplicable here.

In a final bid for implied preemption, during oral argument, Vapebar cited our decision in *Blevins v. Hiebert*, 247 Kan. 1, 795 P.2d 325 (1990). The *Blevins* court held:

> "An enabling act is uniformly applicable to all cities or counties if it authorizes all cities or counties to perform certain acts. Such statutes are state law and preempt the field of their application without the use of preemptive language unless there are express exceptions in the statutes or unless the statutes pertain to police power regulations." 247 Kan. 1, Syl. ¶ 4.

This language may suggest Kansas has recognized the doctrine of implied legislative preemption except where police powers were concerned. See 66 J.K.B.A. at 36.

Our decisions since *Blevins* have not treated it as such. Of the eight cases that cite *Blevins*, none repeat *Blevins'* use of implied legislative preemption. 74 J.K.B.A. at 31 (citing *David v. Board of Norton County Comm'rs*, 277 Kan. 753, 760, 89 P.3d. 893 [2004]; *Hackett*, 275 Kan. 848; *City of Junction City v. Cadoret*, 263 Kan. 164, 170, 946 P.2d 1356 [1997]; *McCarthy*, 257 Kan. at 584; *Johnson County Water Dist. No. 1 v. City*

10

*of Kansas City*, 255 Kan. 183, 193, 871 P.2d 1256 [1994]; *Dillon Stores v. Lovelady*, 253 Kan. 274, 279, 855 P.2d 487 [1993]; *Executive Aircraft Consulting, Inc. v. City of Newton*, 252 Kan. 421, 425, 845 P.2d 57 [1993]; *Blevins v. Board of Douglas County Comm'rs*, 251 Kan. 374, 376, 834 P.2d 1344 [1992]).

Instead, we have recognized that the "'[b]road language in *Blevins* unsettled the principle'" of requiring a clearly manifested legislative intent by statute to preempt the field. *McCarthy*, 257 Kan. at 584. And cases since *Blevins* continue to require a clear statement of legislative intent in order to limit home rule power. See, e.g., *Wyandotte Co./KC*, 277 Kan. at 533-35; *Kansas City Renaissance Festival Corp. v. City of Bonner Springs*, 269 Kan. 670, 673, 8 P.3d 701 (2000); *McCarthy*, 257 Kan. at 584. Based on these "cases decided since *Blevins*, this court seems to be restricting it to its facts." 257 Kan. at 584. Here too, we restrict *Blevins* to its facts and disapprove any indication in prior unclear language that we are adopting the doctrine of implied preemption.

With no language manifesting a clear intent to preempt the field in the Act, the Act does not preempt the Ordinance. But preemption is not the last restriction on a city's home rule power. In order to clear the final hurdle, the Ordinance must not conflict with state law. 257 Kan. at 570-71; see *State v. Jenkins*, 295 Kan. 431, 437, 284 P.3d 1037 (2012) (if a state statute applies uniformly to all cities and the state has not preempted the field, a city may adopt an ordinance that does not conflict with state law). We have emphasized that "'[a] city ordinance should be permitted to stand unless an actual conflict exists between the ordinance and a statute.'" *McCarthy* 257 Kan. at 569 (quoting *Moore v. City of Lawrence,* 232 Kan. 353, Syl. ¶ 4, 654 P.2d 445 [1982]); see *Heartland Apartment Ass'n v. City of Mission*, 306 Kan. 2, 9, 392 P.3d 98 (2017). In determining whether an actual conflict exists between an ordinance and a statute, we apply the well-cited conflict test articulated in *Lee*, 216 Kan. at 501:

"[W]hether the ordinance permits or licenses that which the statute forbids or prohibits that which the statute authorizes; if so, there is conflict, but where both an ordinance and the statute are prohibitory and the only difference is that the ordinance goes further in its prohibition but not counter to the prohibition in the statute, and the city does not attempt to authorize by the ordinance that which the legislature has forbidden, or forbid that which the legislature has expressly authorized, there is no conflict."

As with all things home rule, our consideration of whether there is a conflict must be informed with the constitutional command to "liberally construe[]" the home rule power so as to give "to cities the largest measure of self-government." Kan. Const. art. 12, § 5.

Vapebar argues that the Ordinance conflicts with the Act because the Ordinance prohibits what the Act authorizes. If there was an express authorization in the Act for people under the age of 21 to buy tobacco products, or an express authorization to sell tobacco to those people, Vapebar would have a point. But there is no express authorization. The Act is silent with respect to people who are 18, 19, or 20 years old. In the face of such silence, "where both an ordinance and the statute are prohibitory and the only difference is that the ordinance goes further in its prohibition . . . there is no conflict." 216 Kan. at 501.

For example, in *Lee* we found an ordinance outlawing the carrying of both concealed and unconcealed weapons did not conflict with a state statute outlawing only the carrying of concealed weapons. 216 Kan. at 500-01. The court found the essential difference to be that "the ordinance denounces carrying on one's person a dangerous knife or firearm . . . while the statute makes such carrying criminal only where the weapons are concealed." 216 Kan. at 500. The court held that no conflict existed between the statute and ordinance because the ordinance was merely "more restrictive" than the statute. 216 Kan. at 501. And a more restrictive ordinance will stand as long as "the city does not

12

attempt to authorize by the ordinance that which the legislature has forbidden, or forbid that which the legislature has *expressly authorized*." (Emphasis added.) 216 Kan. at 501.

More recently in *Hackett*, we reiterated the *Lee* test and found an ordinance criminalizing the operation of a bicycle while intoxicated did not conflict with the state law that criminalized motor vehicle DUIs. There, the state statute at issue defined "vehicle" to exclude "'*devices moved by human power*.'" 275 Kan. at 850. The City adopted additional traffic regulations that prohibited operation of a bicycle while under the influence of alcohol. In holding this ordinance valid, the court ruled the statute did not expressly authorize the operation of bicycles by those intoxicated. Rather, the statute merely failed to proscribe it. 275 Kan. at 851.

Similarly, the Ordinance and the Act coexist without conflict. The Act does not "expressly authorize" what the Ordinance prohibits—the selling and buying of tobacco products to and by 18-, 19-, and 20-year-olds. The Act simply fails to proscribe it. Thus, the Ordinance does not conflict with the Act because the Ordinance does not prohibit what the Act expressly authorizes. The Ordinance merely enlarges a provision of the statute by requiring more than the statute—a practice we have repeatedly treated as creating no conflict. See, e.g., *City of Wichita v. Basgall*, 257 Kan. 631, 635, 894 P.2d 876 (1995) ("Where a municipal ordinance merely enlarges . . . the provisions of a statute by requiring more than is required by the statute, there is no conflict between the two unless the legislature has limited the requirements for all cases to its own prescription."); *Leavenworth Club Owners Assn v. Atchison*, 208 Kan. 318, 320-22, 492 P.2d 183 (1971) (upholding more stringent local closing hours).

The Ordinance prohibiting retailers from selling, furnishing, or distributing cigarettes, electronic cigarettes, tobacco products, or liquid nicotine to any person under 21 years old is a constitutional exercise of Topeka's home rule power. The Act does not

preempt cities from regulating tobacco products, and the Ordinance does not conflict with the Act by imposing greater restrictions. Because the Ordinance is a constitutional exercise of the City's home rule power, we reverse the district court's permanent injunction. Vapebar remains free to pursue any of its claims previously dismissed without prejudice in a separate action should it choose to do so.

Reversed.

LUCKERT and JOHNSON, JJ., not participating.

KAREN ARNOLD-BURGER, Chief Judge of the Kansas Court of Appeals, assigned.[1]

MICHAEL J. MALONE, Senior Judge, assigned.[2]

---

[1]**REPORTER'S NOTE:**  Chief Judge Arnold-Burger, of the Kansas Court of Appeals, was appointed to hear case No. 119,269 vice Justice Luckert under the authority vested in the Supreme Court by K.S.A. 2018 Supp. 20-3002(c).

[2]**REPORTER'S NOTE:**  Senior Judge Malone was appointed to hear case No. 119,269 vice Justice Johnson under the authority vested in the Supreme Court by K.S.A. 20-2616.